## Moses Wildes *vs.* Henry W. Vanvoorhis.

A conveyance by a husband, in which his wife does not join, of land exempted as a homestead to the value of $800 by the *St.* of 1855, *c.* 238, is not absolutely void, and passes the title in the excess as against a subsequent purchaser of the husband's title; or, if previously voidable by such a purchaser, is confirmed, as against a sale of the husband's interest after that statute, by the *St.* of 1857, *c.* 298, § 13, which to this extent is constitutional and valid.

Writ of entry, dated February 24th 1859, to foreclose a mortgage of land in Malden. The parties stated the following case for the judgment of the court.

The mortgage sued upon was made to Nathan French, and duly recorded, on the 11th of October 1855, and afterwards duly assigned to the plaintiff, and was in the common form, beginning, " Know all men by these presents, that I, Daniel Gould, of Malden," and in his name alone throughout until the last clause, which was in these words: " In witness whereof I, the said Daniel Gould, and A. J. Gould, my wife, in token of her release of all right and title of or to dower in the granted premises, have hereunto set our hands and seals this eleventh day of October in the year of our Lord eighteen hundred and fifty five

" Daniel Gould. [Seal.]
Alice Julia. Gould. [Seal.] "

The land was owned and occupied by Gould as a homestead until his death on the 26th of March 1856, and by his widow and children ever since, and was exempted by the *St.* of 1855, *c.* 238, from sale or levy on execution, to the value of $800.

Alice J. Gould, his widow, was duly appointed administratrix of his estate; and on the 6th of November 1857 made an agreement in writing with French, that during the spring of 1858 she would apply to the judge of probate for leave to sell this land, and that, if such leave should be granted, she would then sell it, so that the amount of the mortgage should be settled and paid. On the 13th of April 1858 she was licensed by the judge of probate to sell all her husband's real estate for the payment of his debts; and on the 24th of August 1858, in pursuance of such license, sold and conveyed all his right and title in the demanded premises to the defendant, " subject to all and every incumbrance existing thereon."

On the 6th of September 1858 she applied to the judge of probate for an assignment to her of a homestead out of said premises, and such homestead was decreed to her by the judge on the 9th of November following.

*J. G. Abbott & W. Dwight,* for the plaintiff, contended that by *St.* 1857, *c.* 298, § 5, any joinder of the wife, without regard to the intent expressed, would give effect to a release of a homestead; and to the point that the mortgage, if previously voidable, was confirmed by the *St.* of 1857, *c.* 298, § 13, cited, besides the cases referred to in the opinion, *Watson* v. *Bailey,* 1 Binn. 470; *Barnet* v. *Barnet,* 15 S. & R. 72; *Tate* v. *Stoolzfoos,* 16 S. & R. 35; *Chesnut* v. *Shane,* 16 Ohio, 599; *Patterson* v. *Philbrook,* 9 Mass. 151; *Locke* v. *Dane,* 9 Mass. 360; *Ex parte Lane,* 3 Met. 213.

*D. E. Ware,* for the defendant. The wife of Gould did not join in the mortgage, within the meaning of *St.* 1857, *c.* 238, § 5, and therefore the mortgage is invalid, and conveyed no title. *St.* 1851, *c.* 340, § 6. *Richards* v. *Chace,* 2 Gray, 383. Joining in a deed to release dower is not such a joinder as will release homestead or any other interest. *Greenough* v. *Turner,* 11 Gray, 332, and cases cited. *Agricultural Bank of Mississippi* v. *Rice,* 4 How. 225. *Flagg* v. *Bean,* 5 Foster, 63.

The plaintiff's title under this invalid deed is not confirmed by the *St.* of 1857, *c.* 298, § 13. The defendant's case is within the exception of that section, " where parties other than the grantees in such conveyances, or those claiming under them, have, prior to the passage of this act, acquired rights in said real estate by attachment, levy on execution, descent, devise, purchase or otherwise." Gould died intestate on the 26th of March 1856, and the property then descended to and vested in his heirs, subject to the rights of creditors, to be enforced in the settlement of his estate.

But if the *St.* of 1857, *c.* 298, § 13, does apply to the plaintiff's title, it is unconstitutional and void, as it undertakes by a mere legislative act to take property from one person and give it to another. Declaration of Rights, Arts. 1, 10, 12. *Foster* v. *Essex Bank*, 16 Mass. 271. *Medford* v. *Learned*, 16 Mass. 215. *Society for Propagation of Gospel* v. *Wheeler*, 2 Gallis. 105. *Dash* v. *Van Kleeck*, 7 Johns. 477. *People* v. *Board of Supervisors*, 4 Barb. 64. *Holmes* v. *Holmes*, 4 Barb. 295. *Benson* v. *Mayor &c. of New York*, 10 Barb. 223. *Taylor* v. *Porter*, 4 Hill, 140. *Proprietors of Kennebec Purchase* v. *Laboree*, 2 Greenl. 275. *Lewis* v. *Webb*, 3 Greenl. 326. *Hunt* v. *Hunt*, 37 Maine, 333. *Calder* v. *Bull*, 3 Dall. 386. *Van Horne* v. *Darrance*, 2 Dall. 304. *Greenough* v. *Greenough*, 11 Penn. State R. 489. *Mc Carty* v. *Hoffman*, 23 Penn. State R. 507. *Southard* v. *Central Railroad*, 2 Dutch. 1322. *University of Maryland* v. *Williams*, 9 Gill & Johns. 409. *Hoke* v. *Henderson*, 4 Dev. 1. *Bowman* v. *Middleton*, 1 Bay, 252. *Good* v. *Zercher*, 12 Ohio, 364. *Garnett* v. *Stockton*, 7 Humph. 84. *Nelson* v. *Allen*, 1 Yerg. 360. *Officer* v. *Young*, 5 Yerg. 320. *Pearce* v. *Patton*, 7 B. Monr. 167. 1 Kent Com. (6th ed.) 455, 456. 2 Story on Const. § 1399. *Willard* v. *Harvey*, 4 Foster, 344. 7 Amer. Law Reg. 520.

This section does not fall within the principle of that class of cases in which a legislature has been held to have the power, by retroactive laws, to confirm acts of public officers, imperfect sales by sheriffs and administrators, and even deeds invalid from insufficient acknowledgment, although by such enactments

individuals may be deprived of rights previously vested. In those cases, the legislature merely corrects informalities in the acts of officers, over which the parties to the transaction had no control, and the correction is made that the real intention of the parties may be accomplished. Such enactments are of a purely remedial nature, and within the scope of legislative power.

In this case, there is no informality in the deed, or in the transaction in which it was delivered. The parties to the transaction were, by the conclusive presumption of law, informed of the law applicable to their transaction, and of the legal effect of the instrument executed between them. The wife not having duly joined in the deed when it was made, it was then as invalid and ineffectual to pass a title as it would have been without any words of grant, or even a seal, on the part of the husband; and this was known in law by the parties to be so. To concede to a legislature the right, two years afterwards, to make valid a deed of conveyance which was invalid and ineffectual because the proper party did not join in it, is to admit an arbitrary power in the legislature to transfer property from one person to another without consent.

SHAW, C. J. This is a special writ of entry by the assignee to foreclose a mortgage of real estate situated in Malden in this county. The facts on which the question arises appear by an agreed statement thereof by counsel, which, with the deeds referred to, constitutes the case.

The first point taken by the defendant is, that, under the homestead law, the mortgage due from Gould to French, dated October 11th 1855, was absolutely void, that nothing passed by it, and that it was a nullity. This construction was insisted on mainly on the authority of the case of *Richards* v. *Chace*, 2 Gray, 383.

That case arose upon a former statute of 1851, *c.* 340, a statute expressing perhaps imperfectly the whole intent of the legislature. The court came to that construction with some reluctance, believing, as they did, that it was probably the purpose of the legislature to exempt a certain limited amount of real estate as homestead, limited by its value, leaving all the residue of the

owner's estate to be alienated by sale or mortgage, attachment and levy of execution, as if the homestead act had not been passed. But that act having definitely pointed out how the deed should be taken, in order to create a homestead, or how, after a common conveyance to a householder, he should file a declaration that he held it as a homestead, and then declaring that no conveyance by the husband of any property " exempted as aforesaid " should be valid, unless the wife should join therein, the court, taking this in connection with the fact that no means were provided by the act, in the case of sale or mortgage, how the $500 worth should be identified and set apart, felt bound to hold that the terms " exempted as aforesaid " described the entire estate so conveyed and declared, even though it might exceed $500 in value.

The statute of 1855, which was passed in April of that year, was in force when the mortgage now under consideration was made. This statute, like the preceding, provided no mode by which the part exempted could be identified and set apart so as to ascertain precisely what part of the estate embraced in the description passed by the deed, and what by force of law was reserved by the exemption, and in that respect was liable to the same exception. But under the statute of 1855, and the acts which have followed, the court are of opinion that the conveyance by Gould to French, in which the wife of the mortgagor joined for the purpose of releasing her dower, was not absolutely void, and at most was voidable only. In many cases where a transaction is declared void in terms by a rule of the common law, or even expressly by statute, where the obvious interest of the rule is to secure and protect the rights of another party, the construction of law is, that it is voidable so far that it shall not operate to defeat or impair those rights. Such deed is not a dead letter; but can be avoided by such persons only, and at such time, and in such manner, as may be necessary to secure those rights. In other respects it has its natural effect. As for instance: A deed to defraud or delay creditors is declared void; but the construction is, that it can be avoided by creditors only and their representatives, but is good against the grantor and his

heirs.   A deed is made by a tenant in common, granting land by metes and bounds in severalty to a third party, though in quantity and value less than his aliquot part, it is a void grant, because it is injurious to the rights of his co-tenants; but if the grantee can obtain a release of their rights from the co-tenants, such deed is good as against the grantor and his heirs, by way of estoppel, if not by way of grant.

It appears to us that such was the character of the mortgage from Gould and wife to French; it was valid, both by way of grant and estoppel, as to the entire estate embraced in the description, except only the right of homestead; as to the homestead, it was void by force of the statute, as if that had been specially excepted out of the description.   The wife joined in the deed in the usual form for relinquishing dower; and to this extent the deed was binding on her, the mortgagee took the estate free from the incumbrance of dower.   But the wife did not join in the general terms of the deed, nor did she annex to her execution any words indicating an intent to relinquish her inchoate right of homestead.   In analogy to *Catlin* v. *Ware*, 9 Mass. 218, and that class of cases, the signature of the name of the wife and the annexation of her seal, without words indicating her intent, or with words indicating one intent, cannot be construed to hold her as a party beyond the intent thus indicated.

We have spoken of a deed declared void, but held to be voidable only.   Is the conveyance of the husband without the wife, in case of homestead, of this character?   We think it is.   The sole object of the prohibition is to preserve and secure the homestead right for the householder, his wife and children. Any conveyance which has no tendency to defeat this object is not within the purview of this statute.

Who then is there now, who has any right to set up this statute prohibition to defeat the plaintiff's right?   Not the grantor; he is dead.   Not the defendant; because, in the first place, he took his deed from the administratrix, subject to every incumbrance, and this mortgage was an incumbrance, of which he had constructive notice by its registration; in the second place, because he does not claim under the homestead right.

Had the defendant been able to show that the deed in question was utterly void, a mere nullity, he might have legally resisted the plaintiff's demand, simply on the ground of being the defendant, and by the maxim that a plaintiff must recover upon the strength of his own title, and not by the weakness of the defendant's.

The widow and children make no opposition; they have made their homestead claim, and had their claim allowed. The heirs at law are estopped by the deed of their ancestor, and the defendant does not claim under them.

But if there still remain any doubt of the result of the case upon the grounds above stated, the court are of opinion that there is another upon which we must come to the same conclusion in deciding this case, being a suit by the mortgagee against the purchaser at the sale made by the administratrix under the usual license. This conclusion is drawn from the *St.* of 1857, *c.* 298, which puts the matter, we think, on the true ground. It provides, like the *St.* of 1855, that no person shall hold as a household exemption to a larger amount than $800. It provides in § 12 that a conveyance by the husband without his wife, if of the value of $800, shall not be invalid, but shall transfer the estate, subject to the right of dower and right of homestead. It provides a simple and easy mode in § 14, by which the party entitled to a homestead may have the same appraised and set off; and in like manner it directs how the person entitled to the excess over $800 may have his share separated and set off. It directs in § 16 similar proceedings, when the householder goes through proceedings in insolvency, to secure the homestead to the debtor, his wife and children, and the excess, if any, to the creditors. It provides in § 13 that no conveyance heretofore made by the husband of land occupied and exempted as a homestead, and worth more than $800, shall be held invalid to pass the excess beyond such value in consequence of the omission of the wife to join in the conveyance; and declares all titles to real estate, held under such conveyances, to be confirmed and established, subject to the right of dower and the right of homestead, except where parties other than the grantees in such

conveyances, or those claiming under them, have, prior to the passage of this act, acquired rights in said real estate by attachment, levy on execution, descent, devise, purchase or otherwise.

If this were a direct question between the mortgagee and the heirs at law, and did the whole question depend on the confirmatory clause last cited from § 13, with its exceptions, there would be much strength in the argument, that, as Gould, the ancestor, died before the passage of the confirmatory act, their title by descent then accrued, and so by the exception is excluded from this confirmation. Though in this case it is proper to suggest that this argument of the heirs would go on the assumption that this mortgage of their ancestor was wholly void, incapable of confirmation, and so the property remained in the ancestor, and at his decease descended to the heirs. But if it was so, then, by the old established law of Massachusetts, the estate of the intestate was liable for the payment of his debts, by means of a sale by the administrator, by which the estate of the heirs would be devested. Now the plaintiff was the holder of a note, as well as of a mortgage to secure it; he was a creditor as well as a mortgagee, and this very estate might be made assets to pay this very debt, or, if insolvent, to pay all the debts. The heirs therefore would have only an equity of redemption by descent, which they have now. They would take no beneficial interest, to be defeated by giving effect to the mortgage. It would make the same real estate chargeable with the same debt in another form. Whether this would have been a decisive answer to a claim by the heirs, is not now the question; the question is, whether the mortgagee can hold against the purchaser under license of the administratrix.

But the specific confirmatory clause of the *St.* of 1857, *c.* 298, § 13, is far from being the whole of the act bearing on this point. First, it is a declaratory act. If the two former acts left any doubt whether anything passed by such a deed without joinder of the wife, this act declares in express terms that the deed shall not be void, but shall be valid for the excess. Secondly, it provides an easy mode of identifying and separating the part exempted as household, and the amount of excess which passes

by the deed, the entire want of which was one ground on which, under the *St.* of 1851, the deed was held void in the case of *Richards* v. *Chace.*

The effect of this statute, which was a general act, was to declare that Gould's mortgage was a good mortgage in law. Of course it did constitute an incumbrance, which subsisted when the administratrix petitioned for leave to sell, and when the defendant purchased. She could sell an equity of redemption only. She could not defeat the mortgage; it exceeded her power. In point of fact, she sold only a right to redeem, because the deed of the administratrix was made subject to all incumbrances, and this mortgage was an incumbrance.

This statute was passed before the defendant acquired any title, and was in force when he made his purchase. It was a public act, and presumed to be known to all persons. If this statute is to be applied according to its terms, it appears to us to show that the defendant acquired only an equity of redemption, and the estate was then, and is now, subject to this mortgage.

Then the only question is, whether this act is constitutional and valid, or whether it exceeds the power of the legislature, by injuriously devesting or otherwise defeating private rights of property. The court are of opinion that, so far as this statute is relied on to characterize and give force to the mortgage deed in this case, it did not injuriously affect private vested rights, and is not invalid.

This question is a very delicate and often a very difficult one. Instead of discussing the question at large, we think it will be sufficient to cite a few cases showing that laws like the present, though they may formally affect vested rights, if they do not injuriously defeat or impair such rights, have been maintained by the courts of this State and of the United States.

In *Miller* v. *Miller*, 16 Mass. 59, it was held that a statute, declaring that deeds before that time made should be held to constitute a tenancy in common, and not a joint tenancy, though it changed the tenure, and thereby devested one right, substituting another equally beneficial, was not void. So acts changing

prison limits, and so changing the legal effect and operation of an existing bond. *Walter* v. *Bacon,* 8 Mass. 468. *Reed* v. *Fullum,* 2 Pick. 159. So in *Rice* v. *Parkman,* 16 Mass. 326, a resolve authorizing the sale of a remainder in fee, substituting the proceeds to the same uses, was held valid. In *Davison* v. *Johonnot,* 7 Met. 388, a resolve of the legislature which devested the right of one *non compos,* the proceeds being applied to his benefit, was held valid ; and the court cite many cases to the same effect. In *Sohier* v. *Massachusetts General Hospital,* 3 Cush. 483, there is a very full discussion of the power of the legislature to change tenures, to authorize the sale of vested property ; and it was held that, so far as the resolve authorized the conversion of real estate held in trust into personal, it was valid, provided the proceeds were secured to the same parties who were beneficially interested in the real estate ; but so far as the resolve purported to sanction the devesting of real estate by sale, without providing for the application of the proceeds to the same uses to which the real estate was held, it was injurious to private rights of property, and consequently beyond the scope of constitutional legislative power and void.

The same distinction as to the nature and extent of legislative power, and its just and legitimate limits, seems to be sanctioned by the supreme court of the United States. *Wilkinson* v. *Leland,* 2 Pet. 627. The case of *Watson* v. *Mercer,* 8 Pet. 88, bears strongly on the general subject, but may not be considered so directly in point.

The only two Massachusetts cases cited in the learned argument for the defendant are not opposed to these.

In *Medford* v. *Learned,* 16 Mass. 215, it was held that, if a statute could be so construed as to charge a party as for a debt for support gratuitously furnished, when no act existed making it a debt at the time it was furnished, it would be unconstitutional. No doubt it would. A contrary decision would be in effect to hold that the legislature, by mere force of the lawmaking power, could declare that one person should pay another money without consideration.

The case of *Foster* v. *Essex Bank,* 16 Mass. 271, does contain

remarks at the page cited, that " if the act in question " — a general act, extending the liability of corporations to a certain time after the time of their duration as limited by their charter, for the purpose of suing and being sued, in order to close their concerns — " impairs the force and obligation of contracts, or injures private property, or disturbs any vested rights, we ought to declare it void." But the court held that the act in question was not of this character, that it did not injuriously affect private rights, although to a certain extent it extended the liability of the bank, and therefore they held it valid. They therefore affirmed the principle on which we proceed in the construction of the *St.* of 1857, *c.* 298.

The manifest intent of this statute was to carry into effect the intent of the parties to a certain conveyance then before made ; not to impair, but to confirm and strengthen a contract; so far as we give it effect, it cannot operate injuriously to the beneficial rights of any party, and therefore it is not void as being beyond the just scope of legislative authority.

On the whole, the court are of opinion that the plaintiff is entitled to a conditional judgment to recover the premises, except that part set off to the widow and children as their homestead. *Judgment for the plaintiff accordingly.*