ATLANTIC SAVINGS BANK *vs.* METROPOLITAN BANK AND TRUST COMPANY & others.[1]

Middlesex.  January 14, 1980. — February 27, 1980.

Present: BROWN, GREANEY, & DREBEN, JJ.

*Mortgage,* Real estate.  *Real Property,* Tenancy by the entirety, Homestead.

A mortgagor's execution of a mortgage, which contained apt words of grant with mortgage covenants, conveyed his entire interest in the property to the mortgagee, subject to defeasance, and effectively subordinated any homestead interest he possessed to the mortgage lien; under G. L. c. 188, § 7, execution of the mortgage, together with its covenants, by the mortgagor's wife was sufficient to release her interest in the homestead without the need for specific words of release. [287-289]

CIVIL ACTION commenced in the Superior Court on November 1, 1977.

The case was heard by *Fine, J.*

*Lawrence L. Blacker* for Robert J. McHardy & another.

*James A. McAvoy, Jr.,* for Metropolitan Bank and Trust Company.

GREANEY, J.  At issue in this case is the right to surplus funds generated from the foreclosure of the first mortgage

---

[1] Robert J. McHardy, Ann Marie McHardy, Walter Poulin and the United States of America.

held by Atlantic Savings Bank on the home of the defendants Robert J. and Ann Marie McHardy.[2] The McHardys claim prior rights to the funds by reason of their joint declaration of homestead recorded on April 2, 1976, in the appropriate registry of deeds under G. L. c. 188, § 1, as in effect prior to St. 1977, c. 791, § 1.[3] The second mortgagee, Metropolitan Bank and Trust Company (Metropolitan), claims superior rights to the surplus by virtue of a mortgage executed by both defendants on April 26, 1976, and recorded on the same date.[4] Metropolitan filed a motion for summary judgment, which was allowed. Judgment was entered establishing the amount of the defendants' indebtedness and directing that the debt be paid as a priority claim from the interpleaded funds. We agree with the judge's conclusion that the bank has priority.

The pivotal issue[5] before the judge was whether the joint execution of Metropolitan's mortgage by the McHardys released any homestead rights they possessed. The defendants argue that under G. L. c. 188, § 6, which is set forth in

---

[2] The action was one for interpleader pursuant to G. L. c. 244, § 36, as appearing in St. 1973, c. 1114, § 252, and Mass.R.Civ.P. 22, 365 Mass. 767 (1974).

[3] The McHardys held title as tenants by the entirety and purported to make a joint declaration of homestead as husband and wife in a single instrument. The validity of the declaration is discussed in the final paragraph of this opinion.

[4] The United States of America held a Federal tax lien on the property and disclaimed any interest in the fund. The other claimant, Walter Poulin, had levied on an execution against Robert J. McHardy and answered, claiming rights in the fund. The amount owed to Metropolitan will exhaust the fund.

[5] We shall assume without deciding, as did the judge, that the McHardys can assert their claim against the surplus proceeds resulting from the involuntary sale of the home by the first mortgagee. The McHardys advance the theory that the homestead interest continues in order to enable them to use the funds for purchase of another home for the family. See generally 2A Powell, Real Property par. 263(3), at 406.12(3)-406.12(4) (Rohan ed. 1977) (reviewing jurisdictions which include proceeds from sale of homestead property within the definition of the exemption).

pertinent part in the margin,[6] specific words of release are required in order to subordinate a homestead claim to a mortgage executed after the claim is made. This argument overlooks salient features of the mortgage, as well as the provisions of G. L. c. 188, § 7, as appearing in St. 1971, c. 423, § 6,[7] which was in effect when the mortgage was executed and which defined the term "release" as used in § 6.

The mortgage was written in the statutory short form (G. L. c. 183, § 62[5], as appearing in St. 1971, c. 423, §§ 1[5]), and contained apt words of grant with mortgage covenants. G. L. c. 183, §§ 18, 19. Under our title theory, it constituted a deed of conveyance which transferred a fee interest to the bank, defeasible upon the performance of the conditions stated therein. *Pineo* v. *White,* 320 Mass. 487, 489 (1946), and cases cited. *Perry* v. *Miller,* 330 Mass. 261, 263 (1953), and cases cited. Robert J. McHardy's execution of the mortgage, buttressed by its covenants, conveyed his entire interest in the property to the bank, subject to defeasance, and effectively subordinated any homestead interest he possessed to the mortgage lien. Similarly, under § 7, in effect at times material hereto (see note 7, *supra*), his wife's execution of the mortgage, taken together with its covenants (especially the covenants pertaining to seisin and freedom from all encumbrances), was sufficient to release her interest in the homestead without the need for specific

---

[6] Section 6, as in effect prior to St. 1977, c. 791, § 4, provided: "[P]roperty which is subject to a mortgage executed before an estate of homestead was acquired therein, or executed afterward and containing a release thereof, shall be subject to an estate of homestead, except as against the mortgagee and those claiming under him, in the same manner as if there were no such mortgage . . . ."

[7] "No conveyance of property in which an estate of homestead exists, and no release or waiver of such estate, shall convey the part so held and exempted, or defeat the right of the owner or of his wife and children to a homestead therein, unless such conveyance is by a deed signed by the wife, she being competent so to act, or unless such right is released as provided in chapter two hundred and nine; but a deed duly executed without such signature or release shall be valid to pass, according to its terms, any title or interest in the property beyond the estate of homestead."

words of release.  That section expressly provided that the spouse's signature on a deed was sufficient to release her rights.  Section 7 continued in effect the purpose of predecessor §§ 7 and 7A of c. 188, as appearing in St. 1924, c. 56, §§ 3, 4, which together provided that a wife's homestead rights could be released in the same manner in which she could release dower, namely, simply by her execution of the instrument of conveyance.  The word "deed" as used in § 7 includes a mortgage.  See *Swan* v. *Stephens,* 99 Mass. 7, 9 (1868); *Pineo* v. *White, supra* at 489; *Perry* v. *Miller, supra* at 263.  See also R. Swaim, Crocker's Notes on Common Forms § 299 (7th ed. 1955) (signature sufficient for release).  Cf. St. 1924, c. 56, § 5.  (The word "deed" as used in § 7 shall include a mortgage or other instrument conveying land.)  See now G. L. c. 188, § 7, as last amended by St. 1979, c. 248.

In our opinion, this expedited method for release changed the preexisting case law (relied upon by the defendants) which held, based on outmoded concepts of coverture, that in order to bar a wife's right of homestead not only was the wife required to join with her husband in the conveyance by executing the instrument, but also the conveyance, so executed, must have contained apt words expressly releasing her homestead right.  See *Greenough* v. *Turner,* 11 Gray 332, 333-334 (1858); *Wildes* v. *Vanvoorhis,* 15 Gray 139, 144 (1860); *Connor* v. *McMurray,* 2 Allen 202, 203-204 (1861).  See also Pihl, Homestead in Massachusetts, 20 B.U.L. Rev. 81, 87 (1940).

Because the mortgage was sufficient to release the McHardys' interests, it is not necessary to reach the other issues argued by the parties — whether a joint declaration of homestead made by tenants by the entirety in a single instrument bars even one of the homesteaders from validly claiming the estate,[8] and whether at the time this declara-

---

[8] The history of the statute until 1977 discouraged multiple claims and preferred the husband as the claimant.  See G. L. c. 188, §§ 1 and 4, as in effect prior to St. 1977, c. 791, § 1.  See also *Woodworth* v. *Comstock,* 10

tion was made an estate of homestead could be declared on jointly held property.[9]

*Judgment affirmed.*

Allen 425 (1865); *Silloway* v. *Brown,* 12 Allen 30, 32 (1866); *Abbott* v. *Ab-
bott,* 97 Mass. 136, 139 (1867). But see *Dunham* v. *Dunham,* 128 Mass. 34,
36 (1879). No Massachusetts case has been brought to our attention holding
that a joint declaration can be construed as a valid declaration by one of the
parties. Statute 1977, c. 791, § 1, rendered the statute gender neutral but
provides that "only one owner may acquire an estate of homestead in any
such home for the benefit of his [or her] family."

[9] One commentator has suggested that declaring a homestead on a joint
tenancy or tenancy by the entirety at the times material here might des-
troy the four unities of the estate. The question apparently had caused
considerable discussion in conveyancing circles. Park, Conveyancing
§ 295, at 106 (1976 Supp.). See *Bates* v. *Bates,* 97 Mass. 392, 395-396
(1867) (homestead cannot exist in an estate in which the owner has only
an undivided interest); *Holmes* v. *Winchester,* 138 Mass. 542, 543 (1885)
(statute is limited to cases of sole ownership and possession). Stat-
ute 1977, c. 791, § 1, moots the discussion by providing that homestead
can be declared by a joint tenant or tenant by the entirety.