**In re Vasiliki K. HERETAKIS,
d/b/a Java Stop, Debtor.**

No. 03–10041–JNF.

United States Bankruptcy Court,
D. Massachusetts.

May 6, 2003.

Nina M. Parker, Parker & Associates, Winchester, MA, for debtor.

L. Richard LeClair, III, LeClair & Le-Clair, P.C., Waltham, MA, for JT Haffey Builders, Inc.

Scott L. Machanic, Cunningham, Machanic, Celtin, Johnson & Harney, LLP, Natick, MA, for Natick Crossing Corp.

## MEMORANDUM

JOAN N. FEENEY, Chief Judge.

## I. INTRODUCTION

The matter before the Court is the "Motion of Debtor to Avoid Judicial Liens." The holders of the judicial liens the Debtor seeks to avoid, J.T. Haffey Builders, Inc. ("Haffey") and Natick Crossing Corporation ("Natick Crossing")(collectively, the "Creditors"), filed Oppositions to the Debtor's Motion, challenging the validity of the Debtor's homestead exemption. The Court conducted a hearing on the Debtor's Motion on April 3, 2003 and directed the parties to file memoranda on the issue of whether the failure of Haffey and Natick Crossing to timely object to the Debtor's claimed homestead exemption within the time set forth in Fed. R. Bankr.P. 4003(b) precludes them from doing so in their Oppositions to her Motion to Avoid Judicial Liens. A subsidiary issue is whether the Debtor terminated her homestead prepetition by executing several mortgages on her property. The material facts necessary to resolve the issue are not in dispute

and none of the parties requested an opportunity to submit evidence. Accordingly, the issues are ripe for determination.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The Debtor filed a voluntary Chapter 13 petition on January 2, 2003. At the time she filed her petition, she also filed her Schedules, Statement of Financial Affairs and Chapter 13 plan. On Schedule A–Real Property, she listed an ownership interest in property located at 20 Pumpkin Pine Road, Natick, Massachusetts (the "Natick property") with a value of $340,000. On Schedule C–Property Claimed as Exempt, the Debtor claimed, pursuant to Mass. Gen. Laws ch. 188, § 1, the Massachusetts homestead exemption in the sum of $300,000. On Schedule D–Creditors Holding Secured Claims, she listed Haffey and Natick Crossing as holders of writs of attachment obtained in 2002 in the sums of $45,234 and $21,000, respectively. She also listed Washington Mutual as the holder of a first mortgage in the sum of $201,550.98.

The Chapter 13 Trustee originally scheduled the meeting of creditors for January 28, 2003. See 11 U.S.C. § 341(a). On January 17, 2003, counsel to the Debtor filed a "Notice of Rescheduled Section 341 Meeting" together with a certificate of service showing service of the Notice on Haffey and Natick Crossing. Pursuant to the Notice, counsel to the Debtor advised creditors that the § 341 meeting had been rescheduled from January 28, 2003 to February 12, 2003.

The Chapter 13 Trustee conducted the § 341 meeting on February 12, 2003. The docket in this case reflects that the Chapter 13 Trustee adjourned the meeting on that day. Because Fed. R. Bankr.P. 4003(b) provides that "[a] party in interest

may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later," the deadline for creditors, including Haffey and Natick Crossing, to file formal objections to the Debtor's claimed exemptions was March 14, 2003.

On the same day that the Chapter 13 Trustee conducted the § 341 meeting, the Debtor filed her Motion to Avoid Judicial Liens. In her Motion, and in accordance with the formula set forth at 11 U.S.C. § 522(f)(2)(A), she represented that total liens on the property were $567,785.91,[1] that the fair market value of the property was $340,000 and that the liens of Haffey and Natick Crossing impaired her homestead exemption because the sum of all liens and the amount of the exemption she could can claim in the absence of liens exceeded the value of her interest in the absence of any liens and thus were avoidable in their entirety. She attached to her motion, a Declaration of Homestead dated May 14, 1996. The Declaration was recorded at Book 26329, Page 479 on May 20, 1996 at 02:16:32 p.m.[2]

Haffey filed its Opposition to the Debtor's Motion on February 21, 2003; Natick Crossing filed its Opposition on February 24, 2003, both well before the March 14, 2003 deadline for filing objections to the Debtor's claimed exemptions. In its Opposition, Haffey stated that "[t]he Debtor released her declaration of homestead and never filed a new declaration of homestead; therefore, the Debtor does not have a homestead exemption to declare and the motion should be denied." Relying upon Mass. Gen. Laws ch. 188, § 7

---

1. Haffey's writ of attachment was in the sum of $45,234.93, 93 cents more than what was set forth on Schedule D.

2. Section 1 of Mass. Gen. Laws ch. 188 provides:
   An estate of homestead to the extent of $300,000 in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence. Said estate shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies except in the following cases:
   (1) sale for taxes;
   (2) for a debt contracted prior to the acquisition of said estate of homestead;
   (3) for a debt contracted for the purchase of said home;
   (4) upon an execution issued from the probate court to enforce its judgment that a spouse pay a certain amount weekly or otherwise for the support of a spouse or minor children;
   (5) where buildings on land not owned by the owner of a homestead estate are attached, levied upon or sold for the ground rent of the lot whereon they stand;
   (6) upon an execution issued from a court of competent jurisdiction to enforce its judgment based upon fraud, mistake, duress, undue influence or lack of capacity. For the purposes of this chapter, an owner of a home shall include a sole owner, joint tenant, tenant by the entirety or tenant in common; provided, that only one owner may acquire an estate of homestead in any such home for the benefit of his family; and provided further, that an estate of homestead may be acquired on only one principal residence for the benefit of a family. For the purposes of this chapter, the word "family" shall include either a parent and child or children, a husband and wife and their children, if any, or a sole owner.
   Mass. Gen. Laws ch. 188, § 1. *See Patriot Portfolio, LLC v. Weinstein*, 164 F.3d 677 (1999), *cert. denied*, 527 U.S. 1036, 119 S.Ct. 2394, 144 L.Ed.2d 794 (1999)(holding, *inter alia*, that the Bankruptcy Code preempts Massachusetts Homestead Act's exceptions for preexisting liens and prior contracted debts); *In re Leicht*, 222 B.R. 670 (1st Cir. BAP 1998)(same).

and the decision in *Atlantic Savings Bank v. Metropolitan Bank and Trust Co.,* 9 Mass.App.Ct. 286, 400 N.E.2d 1290 (1980), it argued that after recording her homestead, the Debtor executed three mortgages, "each of which would serve to discharge the declaration of homestead." Assuming the validity of the homestead, Haffey added that it should be limited to $100,000, "which was the applicable amount of the exemption when the Debtor purportedly made her declaration of homestead." In its Opposition, Natick Crossing represented that it joined in the reasons stated by Haffey. Neither party objected to the value the Debtor ascribed to her residence or to the manner in which she applied the formula under 11 U.S.C. § 522(f)(2)(A).

Haffey attached copies of three mortgages secured at one time or another by the Debtor's Natick property to its Opposition. The first of the three mortgages was granted to World Savings Bank and executed by the Debtor on May 14, 1996 in the sum of $122,000. It was recorded at Book 26329, Page 482 on May 20, 1996 at 02:16:33 p.m., immediately after the Debtor's homestead declaration was recorded. The second of the three mortgages, captioned "Open–End Subordinate Mortgage," secured an equity line of credit not to exceed $84,000. It was executed by the Debtor on March 22, 2000 in favor of Advanta National Bank. The last of the three mortgages was executed by the Debtor on September 28, 2001 in the sum of $215,000 in favor of Fleet National Bank. In conjunction with that mortgage, the Debtor, on September 28, 2001, executed a "Subordination of Declaration of Homestead," in which she stated that she subordinated "the claims of homestead contained in said declaration to that certain mortgage deed I have executed on

this date in favor of Fleet National Bank in the principal amount of $215,000." [3]

The Debtor filed Responses to both Oppositions. She stated that they were "baseless and frivolous."

## III. DISCUSSION

At the hearing on April 3, 2003, the Court raised the issue of whether the Creditors could object to the Debtor's claimed homestead in their Oppositions to her Motion to Avoid Judicial Liens in light of their failure to object to the Debtor's claimed exemption within 30 days of the conclusion of the § 341 meeting. The Debtor, relying upon the Supreme Court's decision in *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), argued that the Creditors are precluded from objecting to her homestead in their Oppositions to her motion because of their failure to timely file separate objections to her claimed homestead exemption.

In *In re Betz,* 273 B.R. 313 (Bankr. D.Mass.2002), Bankruptcy Judge Boroff addressed the identical issue to the one presented here. Noting that *Taylor* "did not address the present question of what constitutes a sufficient 'objection,'" he found the issue to be well-settled. He stated: "[a]n overwhelming majority of courts have held that, at least in the instance where some form of written objection was manifested within the 30 day deadline, Rule 4003(b) is satisfied even though no formal objection was filed." 273 B.R. at 320 (citing, inter alia, *Applebee v. Brawn (In re Brawn),* 138 B.R. 327, 333 n. 29 (Bankr.D.Me.1992), and *Spenler v. Siegel (In re Spenler),* 212 B.R. 625, 630–31 (9th Cir. BAP 1997)). As the court in *Spenler* noted, Rule 4003(b) does not require a particular form for an objection to

---

**3.** The Court assumes the Fleet mortgage was    assigned to Washington Mutual.

exemption, and the purpose of rule "is to provide timely notice to the debtor that the creditor objects to the debtor's claimed exemption." 212 B.R. at 630.

The Court adopts the reasoning of the courts in *Betz* and *Spenler*. The Court finds that the Creditors are not precluded from objecting to the Debtor's claimed homestead exemption on the ground that they failed to file pleadings separate and apart from their Oppositions to the Debtor's Motion to Avoid Judicial Liens, particularly as their Oppositions were filed within the time prescribed by Fed. R. Bankr.P. 4003(b) and gave the Debtor ample notice of the grounds for their objections. Accordingly, the Court must examine the merits of the Creditors' Oppositions.

■ The Creditors rely upon the provisions of the Massachusetts homestead statute and *Atlantic Savings Bank v. Metropolitan Bank and Trust Co.*, 9 Mass.App. Ct. 286, 400 N.E.2d 1290 (1980). The pertinent provisions of the statute are sections 5 through 7. Section 5 provides: "No estate of homestead shall affect a mortgage, lien or other encumbrance previously existing." Mass. Gen. Laws ch. 188, § 5. Sections 6 of the statute provides the following:

> *Property which is subject to a mortgage executed before an estate of homestead was acquired therein, or executed afterward and containing a release thereof, shall be subject to an estate of homestead,* except as against the mortgagee and those claiming under him, in the same manner as if there were no such mortgage. If the owner of the equity in such property redeems the mortgage, he shall not be allowed to claim under it against the owner of the estate of homestead, his or her surviving spouse, heirs or assigns; but if said owner of the estate of homestead, his or her surviving spouse, heirs or assigns offers to redeem

the residue above the homestead estate and the mortgage from a sale or set-off on execution and the judgment creditor has redeemed the mortgage, the amount paid for such redemption of the mortgage, with interest and expenses, shall be included in the amount to be paid for the redemption of said residue.

Mass. Gen. Laws ch. 188, § 6 (emphasis supplied). Section 7 provides:

> An estate of homestead created under section two may be terminated during the lifetime of the owner by either of the following methods:-(1) a deed conveying the property in which an estate of homestead exists, signed by the owner and the owner's spouse, if any, which does not specifically reserve said estate of homestead; or by (2) a release of the estate of homestead, duly signed, sealed and acknowledged by the owner and the owner's spouse, if any, and recorded in the registry of deeds for the county or district in which the property is located. A deed reserving said estate of homestead shall convey, according to its terms, any title or interest in the property beyond the estate of homestead.

Mass. Gen. Laws ch. 188, § 7.

In *Atlantic Savings Bank*, the court considered "the right to surplus funds generated from the foreclosure of the first mortgage held by Atlantic Savings Bank on the home of the defendants [the McHardys]." 9 Mass.App.Ct. 286, 400 N.E.2d 1290. According to the appeals court, the McHardys claimed prior rights to the surplus proceeds from the foreclosure sale by reason of their joint declaration of homestead, while the second mortgagee, Metropolitan, also claimed superior rights to the surplus by virtue of a mortgage executed by the McHardys approximately three weeks after they recorded their declaration of homestead. The court phrased the specific issue as "whether the

joint execution of Metropolitan's mortgage by the McHardys released any homestead right they possessed." *Id.*

The court, while recognizing the defendants' argument that G.L. ch. 188, § 6 required specific words of release in order to subordinate a homestead claim to a mortgage executed after the claim is made, determined that they overlooked features of the mortgage and the provisions of § 7 of the statute. The court stated:

> The mortgage was written in the statutory short form (G.L. c. 183, § 62(5), as appearing in St.1971, c. 423, § 1(5)), and contained apt words of grant with mortgage covenants. G.L. c. 183, §§ 18, 19. Under our title theory, it constituted a deed of conveyance which transferred a fee interest to the bank, defeasible upon the performance of the conditions stated therein. *Pineo v. White,* 320 Mass. 487, 489, 70 N.E.2d 294 (1946), and cases cited. *Perry v. Miller,* 330 Mass. 261, 263, 112 N.E.2d 805 (1953), and cases cited. Robert J. McHardy's execution of the mortgage, buttressed by its covenants, conveyed his entire interest in the property to the bank, subject to defeasance, and effectively subordinated any homestead interest he possessed to the mortgage lien. Similarly, under § 7, in effect at times material hereto... his wife's execution of the mortgage, taken together with its covenants (especially the covenants pertaining to seisin and freedom from all encumbrances), was sufficient to release her interest in the homestead without the need for specific words of release. That section expressly provided that the spouse's signature on a deed was sufficient to release her rights. Section 7 continued in effect the purpose of predecessor §§ 7 and 7A of c. 188, as appearing in St.1924, c. 56, §§ 3, 4, which together provided that a wife's homestead rights could be released in the same manner in which she could

release dower, namely, simply by her execution of the instrument of conveyance. The word "deed" as used in § 7 includes a mortgage. *See Swan v. Stephens,* 99 Mass. 7, 9 (1868); *Pineo v. White, supra,* 320 Mass. at 489, 70 N.E.2d 294; *Perry v. Miller, supra* 330 Mass. at 263, 112 N.E.2d 805. *See also* R. Swaim, Crocker's Notes on Common Forms, § 299 (7th ed.1955) (signature sufficient for release). *Cf.* St.1924, c. 56, s 5. (The word "deed" as used in § 7 shall include a mortgage or other instrument conveying land). *See now* G.L. c. 188, § 7, as last amended by St.1979, c. 248.

> In our opinion, this expedited method for release changed the preexisting case law (relied upon by the defendants) which held, based on outmoded concepts of coverture, that in order to bar a wife's right of homestead not only was the wife required to join with her husband in the conveyance by executing the instrument, but also the conveyance, so executed, must have contained apt words expressly releasing her homestead right. *See Greenough v. Turner,* 77 Mass. 332, 11 Gray 332, 333–334 (1858); *Wildes v. Vanvoorhis,* 81 Mass. 139, 15 Gray 139, 144 (1860); *Connor v. McMurray,* 84 Mass. 202, 2 Allen 202, 203–204 (1861). *See also* Pihl, Homestead in Massachusetts, 20 B.U. Law Rev. 81, 87 (1940).

*Atlantic Savings Bank,* 9 Mass.App.Ct. at 288–89, 400 N.E.2d 1290.

█ The Creditors' argument that the Debtor terminated her homestead by executing a mortgage because a mortgage constitutes a deed for the purpose of the statute is not substantiated by the Massachusetts statute or subsequent case law. The issue that the appeals court determined in *Atlantic Savings Bank* is not the same as the issue presented here, which is

resolved with reference to the purposes of the statute and subsequent case law. In *Case v. Narrow*, No. 980330B, 1998 WL 1284201 (Mass. Super June 12, 1998), the court stated:

> *Atlantic Savings Bank v. Metropolitan Bank*, 9 Mass.App.Ct. 286, 400 N.E.2d 1290 (1980), holds that a subsequent mortgage subordinates a prior homestead to the mortgage lien, *id.*, 288, 400 N.E.2d 1290, *but does not hold that such a mortgage extinguishes the homestead as to all subsequent creditors.* M.G.L.c. 188, § 7 provides that "an estate of homestead created under § 2 may be terminated during a lifetime of the owner by either of the following methods:- (1) a deed conveying the property in which an estate of homestead exists ... which does not specifically reserve said estate of homestead; or by (2) a release of the estate of the homestead ..." The statute does not, however, state that a mortgage is to be deemed the equivalent of "a deed," for this purpose.
>
> To construe this language to extinguish a homestead vis a vis other than the mortgagee would effectively eliminate homestead protection as to all other subsequent creditors each time a homeowner refinanced or otherwise gave a mortgage on property. It is not reasonable to conclude that the legislature, by enacting Chapter 188, § 7, intended such a drastic result, and *Atlantic Savings Bank* does not so hold.

*Id.* at *1. Moreover, it is, at this point, axiomatic that "homestead exemptions should be liberally construed in favor of debtors" to comport with their beneficent spirit of protecting the family home. *See e.g., Dwyer v. Cempellin*, 424 Mass. 26, 29, 673 N.E.2d 863, 866 (1996); *In re Fiffy*, 281 B.R. 451, 454 (Bankr.D.Mass.2002). Accordingly, the Court finds that the Creditors' Oppositions to the Debtor's Motion to Avoid Judicial Lien lack merit and must be overruled. The Creditors are not mortgagees, and the statute simply does not afford them the same protections it affords mortgagees.

▮ Finally, the Creditors suggest that if this Court were to permit the Debtor to claim a homestead it must be limited to $100,000. As the Debtor recognized, this argument also lacks merit and must be overruled. In increasing the amount that can be claimed for an estate of homestead to $300,000 the legislature expressly provided:

> This act shall apply to declarations of homestead recorded or filed for registration pursuant to section 1 or 1A of chapter 188 of the General Laws before, on, or after the effective date of this act, but the increase in the amount of homestead protection for declarations recorded or filed for registration before the effective date of this act shall not have priority over, and shall be subordinate to, any lien, right or interest recorded or filed for registration before the effective date of this act.

Massachusetts Chapter 174 of the Acts of 2000, § 3. Because the writs of attachment were obtained by Haffey and Natick Crossing in March and September of 2002, respectively, after the effective date of the act, the Debtor is entitled to an estate of homestead to the extent of $300,000.

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order overruling the Oppositions filed by the Creditors and granting the Motion of Debtor to Avoid Judicial Liens.