**In re John V. DESROCHES &
Catherine A. Desroches,
Debtors.**

No. 03–44855.

United States Bankruptcy Court,
D. Massachusetts.

Aug. 31, 2004.

Henry Geberth, Hendel & Collins, P.C., Springfield, MA, for debtors.

Justin H. Dion, Bacon & Wilson P.C., Springfield, MA, for Banknorth, N.A.

*MEMORANDUM OF DECISION*

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is a "Motion For Relief From the Automatic Stay" (the "Motion") filed by Banknorth (the "Bank"). The Bank seeks relief under 11 U.S.C. § 362(d)(1) and (2) to pursue its remedies under a mortgage it holds on the residence of John V. and Catherine A. Desroches (the "Debtors"). The issue to be determined is whether a homestead exemption under Massachusetts General Laws ch. 188, § 1 is subordinated to a subsequently recorded mortgage absent express words of subordination or release in the mortgage. M.G.L. ch. 188, § 1 (2000).

## I. *FACTS AND TRAVEL OF THE CASE*

The material facts are not in dispute. The Debtors own a single family home located in Chicopee, Massachusetts (the "Residence") as tenants by the entirety. In February of 2000, the Debtors filed a Declaration of Homestead (the "Homestead") on the Residence pursuant to M.G.L. ch. 188, § 1. At the time the Homestead was declared, the Residence was subject to a previous mortgage held by Polish National Credit Union (the "PNCU Mortgage").[1]

The Debtors are also the principal owners of two closely held Massachusetts corporations, Strawberry Productions, Inc. ("Strawberry") and Good Grief Productions, LLC ("Good Grief"). Between 2000 and 2002, Strawberry and Good Grief obtained commercial loans (the "Loans") from the Bank. The Loans were guaranteed by the Debtors. In October of 2000, the Debtors also executed a second mortgage on the Residence in favor of the Bank (the "Mortgage") in the principal amount

---

1. Neither the amount nor the validity and priority of the PNCU Mortgage is contested.

of $175,000.00 to secure their guaranty of Strawberry's obligations to the Bank. The Mortgage contained words of grant and covenants standard to such an instrument but did not contain any specific release of the Homestead.

Subsequently, the Loans fell into default. The Debtors filed a petition under Chapter 11 of the Bankruptcy Code (the "Code") in August, 2003. The reorganization effort failed, and, in April of 2004, on the Bank's motion, the case was converted to Chapter 7 of the Code. The Bank then filed the instant Motion, which the Debtors oppose. After a hearing, the matter was taken under advisement.

## II. *POSITIONS OF THE PARTIES*

The Bank contends that its security interest in the Residence is not adequately protected [2] because the Debtors: 1) are in default under the Mortgage and have made no postpetition adequate protection payments; and 2) lack any equity in the Residence. The Bank claims to be owed $164,584.16 secured by the Mortgage,[3] subject to $113,136.00 owing on the first mortgage to PCNU. Because the Bank further asserts that the Residence has a fair market value of approximately $245,000.00 (and a liquidation value of $196,000.00) and

the encumbrances total $277,720.16, it maintains that there is no equity in the Residence for the Debtors.

Incorporated into the Bank's analysis is its assertion that the Debtors' execution of the Mortgage subordinated the previously recorded Homestead. For this, the Bank relies heavily upon the decision in *Atlantic Savings Bank v. Metropolitan Bank and Trust Co.,* which the Bank claims was decided on analogous facts and is controlling in the instant case. 9 Mass.App.Ct. 286, 400 N.E.2d 1290 (1980). According to the Bank, *Atlantic Savings* stands for the principle that a mortgage executed on real estate subject to a previously recorded declaration of homestead under M.G.L. ch. 188 subordinates that homestead to the mortgage, and this is so whether or not the mortgage contained a specific release of the homestead declaration. *Id.* The Bank urges this Court to employ the analysis the Massachusetts Appeals Court utilized in *Atlantic Savings.* That court held that, inasmuch as Massachusetts is a title theory state under common law, the covenants and words of grant in a mortgage convey to the mortgagee interests sufficient, pursuant to M.G.L. ch. 188, § 7, to subordinate a previously recorded homestead.[4] The Bank cites subsequent court

---

**2.** The Motion relies upon 11 U.S.C. § 362(d)(1) & (2), which states in relevant part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
(2) with respect to a stay of an act against property under subsection (a) of this section, if–
(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization ....
11 U.S.C. § 362(d) (2004).

**3.** The Bank claims to be owed a total of $374,850.54 under the Loans.

**4.** M.G.L. ch. 188, § 7 states in pertinent part:
§ 7. Termination of estate of homestead
An estate of homestead created under section two may be terminated during the lifetime of the owner by either of the following methods: 1) a deed conveying the property in which an estate of homestead exists, signed by the owner and the owner's spouse, if any, which does not specifically reserve said estate of homestead ....
M.G.L. ch. 188, § 7 (2000).

decisions that have examined *Atlantic Savings* and reached similar conclusions, most recently a Massachusetts Bankruptcy Court decision, *In re Heretakis*, 293 B.R. 82 (2003). Also, the Bank notes that, although relevant sections of M.G.L. ch. 188 have been amended since *Atlantic Savings* was decided, the Massachusetts Legislature has not acted to alter the outcome of the case.

The Debtors oppose the Motion, claiming that the Bank took the Mortgage *subject* to the Homestead; they maintain the Homestead was not terminated by their execution of the Mortgage. Consequently, there is no need to protect the Mortgage, which has no value after the PCNU Mortgage and the Homestead are deducted from the value of the Residence.[5] The Debtors' interpretation rests on their view of the plain language and "obvious legislative purpose" of M.G.L. ch. 188, which is to both shelter homestead declarants' homes from creditors and to prevent the family from becoming a public charge. *Dwyer v. Cempellin*, 424 Mass. 26, 29, 673 N.E.2d 863, 866 (1996). The Debtors contend that § 6 of M.G.L. ch. 188 is the controlling provision in this instance. According to the Debtors, a mortgage that does not contain a specific release of a previously recorded homestead is subject thereto under the plain and unambiguous language of § 6,[6] regardless of the common law precept of title theory. The Debtors maintain that the Bank was on notice of the Homestead, and the Mortgage was taken subject thereto because it did not contain a release of the Homestead.

While acknowledging that the instant facts are indistinguishable from those in *Atlantic Savings*, the Debtors nevertheless urge this Court to reach a contrary conclusion. In this regard, the Debtors' argument is twofold. From a jurisprudential standpoint, the Debtors fault the *Atlantic Savings* decision as erroneously based on a narrow reading of § 7 that cannot be squared with, and renders a nullity, the "and containing a release thereof" language of § 6. This they label an unsupportable deviation from the canons of statutory construction because neither that language in § 6 nor the term "deed" as used in § 7 is ambiguous. As such, in their opinion, the *Atlantic Savings* court's use of both title theory and an expansive definition of "deed" to include mortgages was judicial overreach. Moreover, the Debtors argue that, if asked, the Massachusetts Supreme Judicial Court (the "SJC") would overturn *Atlantic Savings* not only given the foregoing but on policy grounds as well. The Debtors argue that amendments to § 7 over time signal the Massachusetts Legislature's policy goal of enhancing the protections of M.G.L. ch. 188 by obviating any resort to title theory. In sum, the Debtors describe the decision in *Atlantic Savings* as judicially unsound and at odds with the broad policy goals of M.G.L. ch. 188. They urge this Court to anticipate a similar holding from the SJC and rule contrary to the holding in *Atlantic Savings*.

## III. *DISCUSSION*

At the outset, the Court is mindful of the *In re Miller* court's admonition that a bankruptcy court

> *containing a release thereof,* shall be subject to an estate of homestead, except as against the mortgagee and those claiming under him ....

M.G.L. ch. 188, § 6 (2000) (emphasis supplied).

---

5. The Homestead would protect up to $300,000 of available value.

6. M.G.L. ch. 188, § 6 states in pertinent part:
   § 6. Property subject to prior mortgage
   Property which is subject to a mortgage executed before an estate of homestead was acquired therein, or *executed afterward and*

ruling on an issue of state law must rule as it believes the highest court of the state would rule. When the highest court has not addressed the issue, the Bankruptcy Court should not regard lower court rulings on the issue as dispositive. Rather, it should attempt to predict what the highest court would do and to that end should accord proper regard to decisions of other courts of the state.

113 B.R. 98, 101 (Bankr.D.Mass.1990); *see also Caron v. Farmington Nat'l Bank (In re Caron)*, 82 F.3d 7, 9 (1st Cir.1996) (holding that a federal court must decide an issue regarding the interpretation of a state law according to its anticipation of how the highest state court would hold). In order to answer the question now presented, the Court, "guided by the language of the statutes and by decisions of the Massachusetts Supreme Judicial Court interpreting the homestead statutes, must predict what the Supreme Judicial Court would do if confronted with the issue." *In re Garran*, 274 B.R. 570, 574–75 (Bankr. D.Mass.2002). Though the SJC has not directly ruled on the issue at bar, this Court is satisfied that there exist sufficient signposts to enable this Court to fairly anticipate the outcome.

The SJC has recently and repeatedly held Massachusetts to be a title theory state under common law. *See J & W Wall Systems, Inc. v. Shawmut First Bank & Trust Company et al.*, 413 Mass. 42, 44, 594 N.E.2d 859, 860 (1992) (holding that Massachusetts is a title theory state); *Murphy v. Charlestown Sav. Bank*, 380 Mass. 738, 747, 405 N.E.2d 954, 959 (1980) (finding that a mortgage is a conveyance of title defeasible by mortgagor performing certain conditions) (citing *Perry v. Miller*, 330 Mass. 261, 263, 112 N.E.2d 805, 806 (1953)); *Negron v. Gordon*, 373 Mass. 199, 204, 366 N.E.2d 241, 244 (1977) (holding that mortgagee holds legal title subject to

defeasance); *Krikorian v. Grafton Co-op. Bank*, 312 Mass. 272, 275–76, 44 N.E.2d 665, 666–67 (1942) (holding that the mortgage conveys such interests that "the mortgagee is the holder of the paramount title"). This Court can locate no cases to the contrary.

In light of the continuing vitality of the common law doctrine of title theory in Massachusetts, the Mortgage conveyed interests in the Residence to the Bank sufficient to trigger the release provisions of § 7 as to the Bank. The *Atlantic Savings* court held that the mortgage in that case was written in the statutory short form

and contained *apt words of grant with mortgage covenants*. Under our title theory, it constituted a deed of conveyance which transferred a fee interest to the bank, defeasible upon performance of the conditions stated therein. [Mortgagor's] execution of the mortgage, buttressed by its covenants, conveyed his entire interest in the property to the bank, subject to defeasance, and effectively subordinated any homestead interest he possessed to the mortgage lien.

*Atlantic Savings*, 9 Mass.App.Ct. at 288, 400 N.E.2d at 1291 (1980) (emphasis supplied). Again, this Court recognizes that its responsibility is to anticipate how the SJC would decide the issue and that a lower court decision on the matter is not dispositive. *In re Miller*, 113 B.R. 98, 101 (Bankr.D.Mass.1990). However, this Court finds the *Atlantic Savings* decision well reasoned and substantiated by the statutory provisions underlying standard mortgage covenants:

[I]n a conveyance of real estate the words "mortgage covenants" shall have the full force, meaning and effect of the following words, and shall be applied and construed accordingly: "The mort-

gagor ... covenants with the mortgagee ... that he is lawfully seized in fee simple of the granted premises; that they are free from all encumbrances; that the mortgagor has good right to sell and convey the same; and that he will ... warrant and defend the same to the mortgagee .... "

M.G.L. ch. 183, § 19 (2000).

The Mortgage now before the Court contains words of grant and the term "with mortgage covenants." Mortgage executed between the parties October 6, 2000, p. 1. As such, it served the statutory purpose of "conveying the property" for purposes of triggering the release provision of § 7. *See Milton Sav. Bank v. U.S.*, 345 Mass. 302, 305, 187 N.E.2d 379, 381 (1963) (holding that upon execution of the mortgage, the mortgagor retains only "an equity of redemption accompanied by a right to possession"); *Harlow Realty Co. v. Cotter*, 284 Mass. 68, 69, 187 N.E. 118, 119 (1933) (holding that the "mortgagee named in the mortgage [at the time of the mortgage's execution] acquired the legal title" to the property). Given the foregoing, this Court holds that the SJC, if asked, would rule that, under the relevant statutory provisions and case law, the Mortgage contained sufficient terms to subordinate the Homestead as to the Bank.

## IV. *CONCLUSION*

Because the Homestead is subordinated to the Mortgage, the Debtors have no equity in the Residence, and, because no reorganization is possible in a Chapter 7 case, the Motion must be granted under 11 U.S.C. § 362(d)(2).

An order will issue in conformance with this Memorandum of Decision.