J & W Wall Systems, Inc. *v.* Shawmut First Bank & Trust Co.

J & W WALL SYSTEMS, INC. *vs.* SHAWMUT FIRST BANK
& TRUST COMPANY & others.[1]

Hampden. April 7, 1992. - July 8, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Mortgage*, Priority, Foreclosure. *Real Property*, Mortgage, Deed. *Mechanic's Lien. Words*, "Purchaser."

A mortgagee of real estate who took a deed in lieu of foreclosure from a mortgagor was a "purchaser" of that property within the meaning of G. L. c. 254, § 7, and thus was entitled to priority over the lien for work done on the property by a subcontractor that recorded notice of its contract after the deed in lieu of foreclosure. [43-45]

CIVIL ACTION commenced in the Superior Court Department on March 1, 1990.

The case was heard by *Lawrence B. Urbano*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Edward F. Vena* (*Charles A. Plunkett* with him) for the plaintiff.

*David J. Noonan* for Shawmut First Bank & Trust Company.

WILKINS, J. We hold that a mortgagee of real estate who takes a deed in lieu of foreclosure from a mortgagor is a "purchaser" of that property within the meaning of G. L. c. 254, § 7 (1990 ed.), and thus is entitled to priority over the lien for work done on the property by a subcontractor that recorded notice of its contract after the deed in lieu of fore-

---

[1]The other defendants are The Welch Group, Inc., MCA Investment Associates, Inc., and Marketplace Developers Corp. None of these defendants is involved in this appeal.

closure. We, therefore, agree with the motion judge who entered summary judgment for the defendant bank on the claim of the plaintiff subcontractor that its lien be enforced against the property.[2] We transferred the subcontractor's appeal here.

In 1988, the bank loaned money to a developer of a proposed condominium project in Westfield and took and recorded a first mortgage on the property. In May, 1989, the developer contracted for construction of the project with a general contractor, who in turn entered into subcontracts with the plaintiff for drywall and insulation work. The plaintiff performed its work in the summer of 1989. In December, 1989, the developer abandoned the project and defaulted on the note to the bank. On January 9, 1990, the developer gave the bank a deed in lieu of foreclosure in consideration of the cancellation of the developer's debt to the bank of more than $3,460,000, and that deed was recorded. Two days later the plaintiff recorded its notices of contract. The bank had considered foreclosing on the partially-built project but concluded that it was not practical to wait for the completion of lengthy foreclosure proceedings. The project was subject to vandalism, safety hazards, and exposure to the weather. In March, 1990, the bank sold the property for $2,400,000, indemnifying the buyer against the consequences of various notices of contract that had been recorded.

As relevant to this case, § 7 of G. L. c. 254 provides that "[n]o lien . . . shall avail . . . against a purchaser . . . whose deed was duly . . . recorded prior to the filing or recording" of a notice of a written contract creating a lien under G. L. c. 254, § 2. If the bank was a purchaser, it took and retained title free from the plaintiff's lien. The word "purchaser" is not defined in G. L. c. 254.

---

[2]The motion judge allowed a motion under Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), for the entry of a separate judgment in favor of the bank. Because we decide this case on the assumption that the plaintiff properly filed its notice pursuant to G. L. c. 254, we need not consider the bank's further argument that the plaintiff did not meet the requirements of G. L. c. 254.

The bank acquired an interest in real estate for consideration. Certainly, if, for consideration, the developer had conveyed its interest in the premises to some third party, the grantee would be a purchaser of that interest. We do not regard the bank's position, as a mortgagee, to be substantively different. The legislative intent is to protect one whose rights in land were acquired before a notice creating a lien was recorded. G. L. c. 254, § 7. We think it insignificant that the bank as mortgagee already held legal title to the property.[3] The mortgagor's surrender of its equity of redemption and right to possession of the property was the sale of a valuable asset.

We see no reason why the bank and the developer could not resolve their differences and, at the same time, protect the bank's interest in the property against subsequent liens.[4] The alternative conclusion would force mortgagees hereafter in similar circumstances to protect their rights by foreclosing on property. That procedure is time consuming and expensive. The value of the property could suffer from the delay. Foreclosure also could delay the rehabilitation of partially-completed projects.

The bank is a purchaser, and the sale voluntary, even though the bank acquired the developer's interest in the property when the developer was in financial difficulty.[5] The decision to give the deed was made on behalf of a corpora-

[3]Massachusetts is a title theory State. A mortgagee acquires title to the mortgaged real estate (see *Murphy* v. *Charlestown Sav. Bank*, 380 Mass. 738, 747 [1980]), but only for the purpose of securing the mortgagor's debt (*Negron* v. *Gordon*, 373 Mass. 199, 204 [1977]). The mortgagor has an equity of redemption and a right to possession. See *Milton Sav. Bank* v. *United States*, 345 Mass. 302, 305 (1963).

[4]The bank took subject to any encumbrances that may have been created after the date of the mortgage and that would otherwise have been eliminated by a mortgage foreclosure. See E.C. Mendler, Massachusetts Conveyancers' Handbook § 5:8:05 (3d ed. 1984). The parties did not attempt to preserve the bank's preferred status as mortgagee against subsequent lienholders when it took the deed in lieu of foreclosure. See *Cheffee* v. *Geageah*, 253 Mass. 586, 589 (1925).

[5]We shall assume that the subcontractor has standing to challenge the voluntariness of the transaction.

tion, and the deed was given pursuant to authority of its board of directors. The inducement to have the note and all obligations to the bank discharged in exchange for the deed (instead of having a foreclosure by the bank with it retaining a right of recourse for any deficiency) does not make the transaction involuntary. We see no basis on which a valid claim of involuntariness could be made simply because a corporation made a business decision under the pressure of great financial difficulties and the pressure of a mortgagee bank, which was lawfully seeking to protect its interest to the utmost.[6]

The parties have relied on cases in other jurisdictions concerning the meaning of the word "sale" or "purchase" in other contexts. None of them is instructive beyond pointing out that the intent of the drafters is the guiding rule. Our conclusion that a deed in lieu of foreclosure involves a purchase is consistent with the Uniform Commercial Code definition of "purchase." G. L. c. 106, § 1-201 (32) (1990 ed.) ("taking by sale, discount, negotiation, mortgage, pledge, lien, issue or re-issue, gift or any other voluntary transaction creating an interest in property"). It is also consistent with the definition of "purchase" in the acquisition of real or personal property. Black's Law Dictionary 1234-1235 (6th ed. 1990).

*Judgment affirmed.*

---

[6]Nor do we see any basis for granting time to the subcontractor, who filed a motion under Mass. R. Civ. P. 56 (f), 365 Mass. 824 (1974), to conduct further discovery on the voluntariness issue. The subcontractor does not suggest any possible circumstances concerning involuntariness that would, as to it, defeat the bank's status as a purchaser.