JOHN MOLONEY & others,[1] trustees,[2] vs. BOSTON FIVE CENTS
SAVINGS BANK FSB & another.[3]

Norfolk. December 4, 1995. - April 10, 1996.

Present: LIACOS, C.J., WILKINS, O'CONNOR, GREANEY, & FRIED, JJ.

*Mortgage,* Foreclosure. *Real Property,* Condominium, Mortgage, Deed.
*Statute,* Construction. *Words,* "Foreclosure."

This court concluded that a deed in lieu of foreclosure is the functional
equivalent of formal foreclosure for purposes of G. L. c. 183A, § 22,
with the result that a lender that takes over a condominium project ei-
ther through "foreclosure" or by accepting a deed in lieu of foreclosure
succeeds to the obligations and liabilities of the developer. [433-436]

CIVIL ACTION commenced in the Superior Court Depart-
ment on September 6, 1991.

The case was heard by *Patrick F. Brady,* J., on a statement
of agreed facts.

The Supreme Judicial Court granted an application for
direct appellate review.

*Seth H. Emmer (Marylou Muirhead* with him) for the
plaintiffs.

*Steven P. Perlmutter (Michael D. Lurie* with him) for the
defendants.

LIACOS, C.J. The plaintiffs are trustees representing the
interests of unit owners in the common areas of a condomin-
ium complex in Dedham. The trustees seek declaratory,
monetary, and injunctive relief to rectify perceived faults in
those common areas.

The material facts are simple and are supplied by a stipula-
tion and statement of agreed facts. In early 1987, Boston Five
Cents Savings Bank FSB (Boston Five) provided a construc-

---

[1] Ruth Bailet, Michael Hirsh, Judith A. Dugan, and Gregory Clark, col-
lectively as the trustees of the Mother Brook Condominium Trust.

[2] Of the Mother Brook Condominium Trust.

[3] Delprete Street Corporation.

tion loan to Mother Brook Development, Inc. (Mother Brook). By late December, 1987, Mother Brook recorded a condominium deed of trust pursuant to G. L. c. 183A, § 8 (1994 ed.). Over the next eleven months, Mother Brook sold forty-four of the eighty-six residential units in the complex.

At that point, November, 1988, Mother Brook became financially distressed. Workout negotiations ensued, and in October, 1989, Boston Five acquired a deed in lieu of foreclosure and then immediately passed all title to the condominium complex to a newly created wholly owned subsidiary, Delprete Street Corporation (Delprete, and collectively with Boston Five, bank). Delprete completed several "punch lists" of unfinished work at the complex (within individual units and in common areas), and also marketed and sold the remainder of the residential units to retail purchasers.

A Superior Court judge heard the case on the agreed facts and the stipulation of the parties that liability shall be determined solely on the applicability of G. L. c. 183A, § 22 (1994 ed.), which reads:[4]

> "In the event of a foreclosure upon a condominium development, the lender taking over the project shall succeed to any obligations the developer has with the unit owners and to the tenants, except that the developers shall remain liable for any misrepresentation already made and for warranties on work done prior to the transfer."

The judge concluded that the very first statutory condition on

[4]The stipulation provides that:

"1. The liability of the defendants shall be determined solely upon the applicability of M.G.L. 183A, § 22. It is the position of the plaintiffs that the defendants have succeeded to an obligation of Motherbrook Development, Inc. (the 'Developer') to deliver the condominium development which is the subject of this matter free of material and substantial defects or deficiencies and in a state of good repair.

"2. If the court determines, based on the Agreed Statement of Facts and Documents, that the defendants are not liable under M.G.L. c. 183A, § 22, judgment shall enter for the defendants and the plaintiffs' complaint shall be dismissed with prejudice, subject to the parties' rights of appeal.

"3. If the court determines, based upon the Agreed Statement of Facts and Documents, that the defendants or a defendant is liable, this case shall proceed to trial solely on the issue of damages."

liability ("[i]n the event of a foreclosure") was not met and dismissed the case. He reasoned that a deed in lieu is not a foreclosure. In his view, a foreclosure within the meaning of § 22 must involve either the procedures of G. L. c. 244 (1994 ed.) or the filing of a bill in equity, see G. L. c. 185, § 1 (k) (1994 ed.). Judgment entered for the defendants, the trustees appealed, and we granted their application for direct appellate review.

We must first determine the meaning of the word "foreclosure" in G. L. c. 183A, § 22. At the outset, we look to the words of the statute. See, e.g., *Marco* v. *Green*, 415 Mass. 732, 739 (1993). The bank asserts that the judge was correct in ruling that "foreclosure" means only the procedures of G. L. c. 244 or a bill in equity to foreclose. Nowhere does c. 244 formally define "foreclosure" for its own purposes, much less for the rest of the General Laws.

We turn to the "intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Telesetsky* v. *Wight*, 395 Mass. 868, 872-873 (1985). A deed in lieu is, for a great many purposes, the functional equivalent of a formal foreclosure. A deed in lieu essentially involves an alternate method of the collection of security. The lender accepting a deed in lieu, just like the lender exercising strict foreclosure, has the security interest mature into real ownership without any requirement of public sale. See *J & W Wall Sys., Inc.* v. *Shawmut First Bank & Trust Co.*, 413 Mass. 42, 44 (1992). Cf. *Waterville Indus.* v. *Finance Auth. of Me.*, 984 F.2d 549, 550-552 (1st Cir. 1993) (neither deed in lieu nor subsequent bankruptcy settlement that voluntarily transferred title to lender was anything more than lender protecting security interest). Perhaps most importantly, the deed in lieu is, in effect, the settlement of foreclosure litigation. See *J & W Wall Sys., Inc.* v. *Shawmut First Bank & Trust Co., supra.* The deed in lieu therefore can be the business equivalent of formal

foreclosure. See, e.g., M. Park & D. Park, Real Estate Law § 521, at 628 (2d ed. 1981).[5]

The clear legislative intent is to impose liability on those lenders who "tak[e] over the project," G. L. c. 183A, § 22, in order to acquire the security that backs a loan to a condominium developer. The parties to whom liability might be owed (unit owners, a condominium association, and even contractors) are not necessarily party to the settlement with the lender after a developer's default. They cannot control whether a deed in lieu is used. If taking a deed in lieu avoids potentially massive liability, then a great many lenders, and perhaps every lender, exercising their security interests would take that route. Under the bank's view, lenders would never incur liability, making § 22 an empty shell.[6] The legislative scheme makes sense and is fulfilled only if deeds in lieu are, for the purposes of § 22 (as they are for many other purposes), the functional equivalent of formal foreclosures. "[W]hen a literal reading of a statute would be inconsistent with legislative intent, we look beyond the words of the statute." *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 336 (1982).

The bank attempts to provide a rationale for distinguishing between deeds in lieu and formal foreclosure procedures. It is contended that if § 22 does not extend liability to the lender acquiring a deed in lieu, the statute will provide an incentive for that lender to acquire the deed quickly (rather than use lengthy formal procedures) and complete a condominium project. Although that might be a rational choice by the

---

[5]The agreed facts in this case support this view. When workout negotiations came to no avail, Boston Five's executive committee voted to approve the commencement of foreclosure proceedings. Only then did the bank take the deed in lieu. For purposes of internal decision making, Boston Five may have treated a deed in lieu and formal foreclosure identically, both requiring executive committee approval.

[6]We invoke a corollary to the traditional canon of construction that statutes shall not be interpreted to have a "[b]arrenness of accomplishment." *Plymouth County Retirement Ass'n* v. *Commissioner of Pub. Employee Retirement*, 410 Mass. 307, 312 (1991). The ability of parties to contract around the effects of a statute does not always implicate this canon. Many times a statute establishes a "default rule" for the relationship between two parties, and those parties are free to bargain for a different arrangement. When legislation protects third parties, however, the freedom of contract between two parties, when it may affect the protected third party, can cause a statute inappropriately to have no practical effect.

Legislature, it is manifestly not the choice that was made in § 22. Avoiding developer liability is likely to be a strong enough incentive to impel virtually all lenders to acquire deeds in lieu. Section 22 would be devoid of practical effect, and we do not so read statutes. See *Plymouth County Retirement Ass'n* v. *Commissioner of Pub. Employee Retirement*, 410 Mass. 307, 312 (1991).[7]

The bank refers us to *J & W Wall Sys., Inc.* v. *Shawmut First Bank & Trust Co., supra*, in which we held that a deed in lieu is a "purchase" for purposes of G. L. c. 254, § 7 (1994 ed.). The argument is that this statute treats "purchases" (including deeds in lieu) and "foreclosures" differently, thereby demonstrating a lack of functional equivalency. Quite to the contrary, *J & W Wall Sys., supra*, addressed the treatment of a deed in lieu with respect to a contractor's lien recorded after that conveyance. For that purpose c. 254, § 7, treats "foreclosures" and "purchases" (including deeds in lieu) identically — not enforcing contractor's liens recorded after the lender exercises on the security. Thus, read together the statute and our decision further demonstrate functional equivalency between the deed in lieu and more formal foreclosure proceedings.

There are of course several real differences between formal foreclosure and the deed in lieu. The bank attempts to show that "foreclosure" and "deed in lieu" have distinct meanings, and that in saying one the Legislature did not mean the other. Primary among these differences is that formal procedures eliminate junior liens, and deeds in lieu do not. E.g., *J & W Wall Sys., supra* at 44 n.4. This distinction proves too much. What it indicates is that a lender who takes a deed in lieu is generally *less* protected than a lender using formal procedures.

[7]The bank further argues that imposing § 22 liability only on lenders who formally foreclose would provide a large incentive for lenders to settle by acquiring deeds in lieu. Settlement is a favored resolution of litigation, e.g., *LePage* v. *Bumila*, 407 Mass. 163, 166 (1990), but that does not support a rule that imposes *collateral* liability (unrelated to the litigation being settled) on the party that chooses not to settle. Settlement is favored because it minimizes the transaction costs of litigation. See generally Miller, Some Agency Problems in Settlement, 16 J. Legal Stud. 189, 191-192 (1987), citing R. Posner, Economic Analysis of Law § 21.5 (3d ed. 1986). Injecting collateral liability considerations skews the incentive structure of the settlement decision. Settlement would no longer represent a minimizing of transaction costs, and would not be favored as a device of economic efficiency.

The Legislature has made a decision to protect retail purchasers — unit owners — by preserving liability. Section 22 is essentially a consumer protection statute. It would be perverse to impute to the Legislature an intent to treat the acquirer of a deed in lieu better in this situation, merely because of an expedient maneuver in which the unit owners are not involved. See *Shepard* v. *Finance Assocs. of Auburn, Inc.,* 366 Mass. 182, 191 (1974) (consumer protection statute interpreted broadly to effectuate legislative purpose).[8]

We vacate the judgment below based on our understanding that the phrase "[i]n the event of a foreclosure" in § 22 includes instances in which a lender acquires a deed in lieu of foreclosure. The judge based his ruling solely on an interpretation of the word "foreclosure," and did not rule on any other aspect of § 22. We do not generally reach issues not discussed below, contrast *American Grain Prods. Processing Inst.* v. *Department of Pub. Health,* 392 Mass. 309, 311-312 (1984). Additionally, the record in this case leaves open the questions whether the defendants in this case had "tak[en] over the project" (G. L. c. 183A, § 22), whether the plaintiff trustees have standing to assert claims for damage to unit owners, whether assuming exposure to liability under § 22 allows the plaintiffs to recover for (a) negligence, (b) breach of warranty (express or implied), and (c) breach of fiduciary

---

[8]The deed in lieu is also subject to attack as a preference or fraudulent conveyance. See generally Murray, Deeds in Lieu of Foreclosure: Practical and Legal Considerations, 26 Real Prop., Prob. & Tr. J. 459, 475-498 (1991). These differences further demonstrate that, in some circumstances, the deed in lieu may subject the lender to more, not less, liability than the lender who formally forecloses. Indeed, in the case of preference, such additional liability runs to persons of which the lender may not even have constructive knowledge, such as unsecured creditors whose claims increase in value when the preference recovery enriches the bankruptcy estate.

Finally, the bank points to, as an example of lack of functional equivalency, the inability of a lender acquiring a deed in lieu to obtain a deficiency judgment. That argument puts the cart before the horse. It may be true that in most cases the agreement accompanying the deed in lieu contains either a release of the underlying debt or a covenant not to sue for deficiency. That is the consideration given by the lender, and is simply a matter of contract. The parties could just as easily contract (in the case of property that has lost significant value) for the lender to take the security by deed while some deficiency is still owed as a personal obligation (perhaps by a guarantor). We are aware of no statutory limitation on the ability of a lender to seek a deficiency judgment unless the lender exercises a power of sale. *Wornat Dev. Corp.* v. *Vakalis,* 403 Mass. 340, 345 (1988).

duty (if any). Thus, we remand the case for further proceedings consistent with this opinion. Whether, after further consideration, a trial "solely on the issue of damages" (see note 4, *supra*) as per the stipulation is appropriate, is also open to such further rulings as the judge may make in his sound discretion. See and compare *Stuart* v. *Brookline*, 412 Mass. 251, 254-255 (1992), and *Crittenton Hastings House of the Florence Crittenton League* v. *Board of Appeal of Boston*, 25 Mass. App. Ct. 704 (1988), with *Huard* v. *Forest St. Hous., Inc.*, 366 Mass. 203, 208-209 (1974), citing *Loring* v. *Mercier*, 318 Mass. 599, 601 (1945).

*So ordered.*