ALVAN E. LEVENSON *vs.* CURT R. FEUER[1] & another[2]
(and a companion case[3]).

Nos. 01-P-1364 & 02-P-1275.

Middlesex. February 5, 2003. - February 12, 2004.

Present: DUFFLY, DREBEN, & KANTROWITZ, JJ.

*Divorce and Separation,* Alimony, Separation agreement. *Contempt. Contract,* Separation agreement, Interference with contractual relations, Emotional distress, Reformation. *Practice, Civil,* Contempt, Attorney's fees. *Mortgage,* Foreclosure. *Consumer Protection Act,* Unfair or deceptive act. *Conversion. Emotional Distress. Declaratory Relief.*

In a civil action arising from the execution of certain documents in connection with the financing of a lump sum alimony payment that the plaintiff had agreed, as part of a separation agreement, to pay his wife when they divorced, the judge erred in dismissing a claim for wrongful foreclosure of the deeds that the plaintiff had delivered in escrow and that the defendant had transferred to a private lender where, under the terms of the separation agreement, delivery of the deeds constituted the delivery of additional instruments of security for the underlying debt, and as such were equitable mortgages subject to the statutory requirements of G. L. c. 244, § 14, regarding foreclosure [436-438]; however, the judge properly dismissed claims of intentional interference with contractual rights, violation of G. L. c. 93A, and infliction of emotional distress [438-439].

In an action brought in Probate Court seeking rescission of a special master's execution of certain documents (in connection with the financing of a lump sum alimony payment that the plaintiff had agreed, as part of a separation

[1]Individually and as trustee of the MB Trust and the Needham Rehabilitation Trust. As is our custom, the name of the trust is as it appears in the complaint filed in the Probate Court. See note 8, *infra.*

[2]Orsett Properties, Ltd. Kassler & Feuer, P.C., not a party below, intervened in the appeal. June Levenson, Michael Bronner, and Richard D. Packenham were also named as defendants; judgment entered for them in the Probate Court and the plaintiff has filed no cross appeal.

[3]Alvan E. Levenson, individually and as trustee of the Needham Levenson Trust, *vs.* Curt R. Feuer, individually and as trustee of the MB Trust and the Needham Rehabilitation Trust; Michael Bronner; Orsett Properties, Ltd.; Kassler & Feuer, P.C.; Haskell A. Kassler; and Roy A. Cramer. As is our custom, the name of the trust is as it appears in the complaint filed in the Superior Court. See note 8, *infra.*

agreement, to pay his wife when they divorced) pursuant to a contempt judgment and a declaration that the contempt action was premature, and that the plaintiff had the option to finance his alimony obligation through a financial arrangement with his wife more favorable than the transaction that the judge had ordered in the contempt judgment, the Probate Court judge erred in undermining the propriety of the contempt proceeding in his findings, because it was not open to the plaintiff to collaterally attack the contempt judgment, where the plaintiff had not appealed from the contempt judgment nor sought postjudgment relief; nor should the Probate Court judge have declared the documents signed by the master null and void, as any infirmities in those documents could have been the subject of direct attack. [441-442]

In an action brought in Probate Court seeking rescission of a special master's execution of certain documents (in connection with the financing of a lump sum alimony payment that the plaintiff had agreed, as part of a separation agreement, to pay his wife when they divorced) pursuant to a contempt judgment and a declaration that the contempt action was premature, and that the plaintiff had the option to finance his alimony obligation through a financial arrangement with his wife more favorable than the transaction that the judge had ordered in the contempt judgment, the Probate Court judge erred in awarding the plaintiff attorney's fees and costs, where the case did not involve the kind of exceptional circumstances that would warrant the imposition of attorney's fees and costs, and where the judge could not assess fees against the individual defendant as sanctions when the defendant was not acting in his capacity as an attorney representing any party either in the contempt action or in the declaratory judgment action. [442-444]

CIVIL ACTION filed in the Middlesex Division of the Probate and Family Court Department on November 21, 1995.

The case was heard by *Eliot K. Cohen*, J., and a question of law on a motion for attorney's fees was reserved and reported by *Sheila E. McGovern*, J.

CIVIL ACTION filed in the Superior Court Department on September 9, 1997.

The case was heard by *Ralph D. Gants*, J.

*Robert J. Rutecki* for Curt R. Feuer & another.

*Alvan E. Levenson*, pro se.

*Edward J. Barshak* for the intervener.

DUFFLY, J. When Alvan E. Levenson (Levenson) failed to execute certain documents in connection with the financing of a lump sum alimony payment he had agreed to pay his wife when they divorced, he was found in contempt by a judge of the Probate and Family Court and a special master was appointed

to sign the documents — a promissory note, mortgages, and deeds — in Levenson's stead. Levenson did not appeal from the contempt judgment. Two years later, on November 21, 1995, he filed in Probate Court a complaint for declaratory judgment, seeking rescission of the documents the master had executed pursuant to the contempt judgment and a declaration that (a) the contempt action was premature; and (b) he had the option to finance his alimony obligation through a financial arrangement with his wife more favorable than the transaction the judge had ordered in the contempt judgment. The Probate Court judge declared the promissory note, mortgages, and deeds null and void, ordered Levenson to execute new loan instruments with reformed terms, and ordered the wife's attorney's firm, Kassler & Feuer, P.C., and Curt R. Feuer, an attorney in the firm who had procured the financing for Levenson, to pay Levenson's attorney's fees for the declaratory judgment action. A second Probate Court judge reserved and reported to this court the question of the firm's liability for fees, as the firm was not a party to the declaratory judgment action. The defendants in the Probate Court action appealed from the judgment nullifying the loan documents. Mr. Feuer and the firm as intervener appealed from the order to pay Levenson's attorney's fees.

During the pendency of the Probate Court action, Levenson filed a complaint in Superior Court, setting forth numerous claims[4] arising generally from the same circumstances. He named the same defendants and, in addition, Kassler & Feuer, P.C., and two of its partners, Haskell A. Kassler and Roy A. Cramer. Following a bench trial in Superior Court, judgment entered for the defendants dismissing all counts. Levenson appealed.

---

[4]The claims are intentional interference with contractual relations (count one); unfair and deceptive trade practices under G. L. c. 93A (count two); violations of civil rights (count three); civil conspiracy (count four); wrongful foreclosure (count five); slander (count six); abuse of process (count seven); conversion (count eight); waste (count nine); intentional infliction of emotional distress (count ten); trespass (count eleven); usury (count twelve); conversion (count thirteen); slander of title (count fourteen); slander per se (count fifteen); wrongful eviction (count sixteen); breach of mortgage covenant (count seventeen); and interference with prospective contractual relations (count eighteen).

On motion of the parties, we have consolidated the two appeals. We begin our discussion with the Superior Court case.

I. *Superior Court action.* Levenson does not challenge the detailed subsidiary findings of the Superior Court,[5] which we now summarize.

1. *Background facts and proceedings.* In bitterly contested divorce proceedings, Levenson and June Levenson, each represented by counsel, argued primarily over the distribution of their real estate interests and the alimony to be paid to June Levenson. A trial on the divorce had commenced, but had not yet concluded, when the parties reached a tentative settlement. Levenson expressed concern about his ability to finance a lump sum payout of alimony, but his wife's attorney, Mr. Kassler, was of the opinion that financing could be obtained from a client of his firm.[6] In a memorandum of understanding executed by the parties, "Option 1" described the private financing arrangement and "Option 2" described an arrangement in which June Levenson was, in essence, the lender. The parties later executed a separation agreement (agreement) superseding the memorandum of understanding, in which Levenson agreed to borrow funds, possibly from a private lender, in order to pay the lump sum alimony, and describing a security arrangement

[5]The Superior Court findings were based upon testimony received at the bench trial, exhibits admitted in evidence at the trial, and the stipulations of the parties, which incorporated some, but not all, of the findings in the Probate Court's earlier declaratory judgment. Motions before the Superior Court to apply claim preclusion and issue preclusion to the Probate Court findings had earlier been denied. Some of the witnesses appearing before both courts apparently testified differently in the Superior Court than they had in the Probate Court declaratory judgment trial. In his recitation of the facts, Levenson cites to parts of the Probate Court findings that were neither stipulated to by the parties nor incorporated by the Superior Court judge. However, as Levenson provided no transcript of the Superior Court proceeding, see Mass.R.A.P. 18, as amended, 428 Mass. 1601 (1998), there is no basis to challenge the Superior Court judge's findings.

[6]Prior to reaching tentative agreement, Mr. Kassler had telephoned his law partner, Mr. Feuer, who was managing a large sum of money held by a client, Michael Bronner. Mr. Feuer agreed to make the loan but did not seek or obtain Bronner's approval before doing so.

Bronner filed no cross claim, and the relationship and obligations running between Mr. Feuer and Bronner, while providing context, are not otherwise germane to our discussion.

with June Levenson to remain in effect only until financing was in place.

On September 9, 1993, the parties with their attorneys appeared in Probate Court with their executed separation agreement. After inquiring of the parties whether they understood the agreement, the Probate Court judge, satisfied with their responses, approved the agreement as fair and reasonable and entered a judgment of divorce nisi that incorporated it. No appeal was taken from the divorce judgment.[7] At the conclusion of the divorce hearing, Levenson terminated the services of his attorney and instructed his wife's attorney, Mr. Kassler, to thereafter contact him directly.

The agreement, which by its terms also survived the divorce judgment as a binding contract, set forth certain obligations with respect to the financing of a $428,000 lump sum payment to June Levenson "in complete satisfaction of [Levenson's] current and future obligation to pay care, maintenance and support to [June Levenson]." A fundamental purpose of the lump sum payment, which had to be paid within thirty days, was to end the weekly payment of alimony. Paragraph 7(b) of the agreement set forth the terms of the loan transaction and required Levenson to secure the $428,000 obligation by giving a private lender a mortgage on each of three specified properties owned by Levenson. The deeds to the properties would be held in escrow and delivered to the lender in the event of Levenson's default. As set forth in the agreement, the deeds were "to be in lieu of the lender having to institute any foreclosure proceedings and shall be additional security which has induced the lender to make such a loan." In the interim, before the private loan was in place (and in the event Levenson was unable to obtain private financing), paragraph 7(c) of the agreement provided that mortgages on these same properties were to be given immediately to June Levenson.

Shortly after the September 9, 1993, divorce hearing, Mr. Kassler asked Mr. Cramer of his law firm to prepare the private lender financing documents, which included a promissory note,

---

[7]Levenson's request under Mass.R.Dom.Rel.P. 60(b) for relief from the divorce judgment, filed in November, 1995, was denied, and we have not been made aware of any appeal from that denial.

the mortgages and deeds to Levenson's three properties, and a trustee's certificate. These documents provided that the lender was to be Curt Feuer, as trustee of the MB Trust, a Massachusetts realty trust (of which Mr. Feuer was the sole trustee and Mr. Feuer's client, Michael Bronner, the sole beneficiary).[8] The promissory note, in the amount of $571,218,[9] had a two-year term and an interest rate of thirteen percent.

Before the documents were signed, Levenson decided that the agreement was, as he told Mr. Cramer during a telephone conversation on September 14, 1993, a "bad deal" for him. By letter dated September 22, Levenson also wrote to June Levenson proposing a settlement with terms entirely different from those in the agreement, but adding that if she chose not to accept his new offer, "as I promised you, I'll go along with [Mr. Kassler's] financing." The documents were to be signed on October 7, at a meeting at Mr. Kassler's law firm. On that date Levenson refused to look at or sign the documents. Levenson claimed that it was the fact that Mr. Feuer, a member of the law firm that had represented his wife in the protracted divorce proceedings, appeared to be the lender on the documents that caused him to back away from the deal.

The Superior Court judge found that the promissory note contained two errors, but that the errors were made in good faith by Mr. Cramer.[10] He further found that Levenson's "refusal to sign the Promissory Note could not possibly have been based

---

[8]The promissory note misidentified the lender as Mr. Feuer in his capacity as trustee of the "MB Trust," when the loan actually derived from the MB Mortgage Trust, a nominee trust as to which Michael Bronner was the sole beneficiary. We henceforth use the correct name of the trust.

[9]As provided by the terms of the separation agreement, the principal amount of the loan included the $428,000 lump sum alimony payment, plus two years of prepaid interest (at a rate of interest not to exceed fourteen percent), as well as points or a prepayment penalty equal to six months of interest.

[10]The note misnamed the lender, see note 8, *supra*, and failed to include a provision that Levenson would be entitled to a return to him of a proportional share of the prepaid interest in the event he repaid the loan prior to its maturity date. Although the agreement did not specify the term of the loan, the judge found no error in the note's specification of a two-year term. Interpreting the agreement and based on "testimony heard at trial," the judge found that it was the parties' intent that the term of the loan be two years.

The Probate Court had found more numerous errors (see discussion in part II, *infra*, and note 5, *supra*), but, as will become clear, it is the Superior

on Mr. Cramer's two drafting errors, because [Levenson] had neither seen the Promissory Note nor learned of its terms" when, on September 14, he declared to Mr. Cramer that it was a bad deal for him and that he would not sign the papers.

June Levenson initiated contempt proceedings against her former husband in Probate Court three days prior to the October 7 meeting, alleging a violation of the provisions in the agreement requiring that he provide her with a mortgage until he had completed the private lending transaction and paid his alimony obligation. When Levenson refused to execute the private lending documents at the October 7 meeting, June Levenson amended her complaint to allege that Levenson had further violated provisions of the agreement when he failed to execute the note and other documents necessary to secure the private loan.

In his answer to the amended complaint for contempt, Levenson claimed he was coerced by his attorney into signing the separation agreement and asked that the agreement be declared null and void. At the Probate Court contempt hearing Levenson, representing himself, argued that the private financing arrangement was a bad deal for him, and sought to revise the transaction. Levenson did not claim that his failure to sign the documents was because they contained errors or were inconsistent with the provisions of the separation agreement.

Following the hearing, a judgment entered holding Levenson in contempt and appointing a special master, pursuant to Mass. R.Dom.Rel.P. 70,[11] to sign all documents the agreement obliged Levenson to sign. Levenson did not appeal from the contempt judgment. The special master signed the documents and June

Court's determination that the errors were made in good faith that is essential to that court's judgment.

[11]Rule 70 of the Rules of Domestic Relations Procedure is identical to Mass.R.Civ.P. 70, 365 Mass. 836 (1974), which provides in relevant part:

> "If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like

Levenson received her lump sum payment from the loan proceeds, less her attorney's fees.

The deeds executed by the special master recited consideration of one dollar and left blank the grantee's name. The note signed by the special master had the same terms and conditions as the note originally prepared by Mr. Cramer, except that instead of being for $571,218, it was for $580,915.[12] Levenson sought no relief under Mass.R.Dom.Rel.P. 60, or otherwise, from any claimed errors in the documents.

The entire unpaid balance of principal of the note became due on November 15, 1995. The Superior Court judge found that Levenson made no effort to pay any part of the principal. As a result of Levenson's default, Mr. Feuer (as trustee of the MB Mortgage Trust) sought delivery of the deeds to the three properties that had been held in escrow.[13]

Mr. Feuer and Mr. Cramer agreed that the MB Mortgage Trust should be inserted as the grantee on the deeds where it had been left blank, and that the one dollar consideration should be "whited out" and replaced with what they termed to be the true consideration: the $580,915 balance they determined was due under the promissory note. After recording the conveyance of the three deeds to the properties to the MB Mortgage Trust, Mr. Feuer conveyed all three properties to himself in a single deed, as trustee of the Needham Rehabilitation Trust, a nominee trust Mr. Feuer created the day following Levenson's default. The sole beneficiary of the new trust was Orsett Properties, Ltd.

---

effect as if done by the party."

The rule makes no reference to a "special master," and we use the term employed by the parties and the Probate Court to refer to a person appointed under this rule.

[12]The $9,697 difference consisted of the following: $1,171.25 in legal fees to Kassler & Feuer, P.C., incurred in connection with the contempt proceeding; an unexplained "bank fee" in the amount of $1,560; and $6,965.26 for interest, at nine percent, on the $428,000 alimony payment covering the period from September 9, 1993, to November 16, 1993. (The figures were apparently rounded to produce the $580,915 appearing on the note; the actual total of all the items reflected in the note was $580,914.51.)

[13]The deeds had not been delivered to an independent escrow agent, as required by the agreement, but were maintained in Mr. Cramer's own files at the offices of Kassler & Feuer, P.C. As the judge found, Mr. Cramer essentially served as his own escrow agent.

(Orsett), an entity wholly owned by Mr. Feuer.[14] The deed was recorded and stated a consideration of $585,915, a figure $5,000 more than the amount of the loan balance at the time Mr. Feuer requested delivery of the deeds.

Now holding record title to all three properties, Mr. Feuer informed commercial tenants leasing space at one of the properties that rents should henceforth be paid to Orsett. Levenson was living in another of the properties and running his business from the third. Mr. Feuer unsuccessfully sought to evict Levenson from both properties Levenson occupied. As of the date of the Superior Court trial, Levenson remained in possession of these two properties paying no rent, real estate taxes, or insurance.

2. *Discussion.* Levenson appealed from the Superior Court judgment only insofar as it dismissed counts one (intentional interference with contractual relations), two (unfair and deceptive trade practices under G. L. c. 93A), five (wrongful foreclosure), eight (conversion), nine (waste), and ten (intentional infliction of emotional distress). The sole issue of significance in his appeal from this judgment is the dismissal of the claim for wrongful foreclosure.

a. *Wrongful foreclosure.* Levenson's wrongful foreclosure claim asserts that the recording of the deeds that had been delivered in escrow improperly circumvented the statutory provisions governing mortgage foreclosure. See G. L. c. 244, § 14.

The defendants, in essence, argue that language in the separation agreement providing that the deeds in escrow were to be transferred to the private lender "in lieu of the lender having to institute any foreclosure proceedings" is a binding reflection of the parties' intent that requirements under c. 244, § 14, including notice and the right to redeem, would be dispensed with in the event of Levenson's default. They claim that the agreement

---

[14]Mr. Cramer, who at Mr. Feuer's direction had prepared the declaration of trust creating the Needham Rehabilitation Trust and the deed transferring the properties to that trust, did not know that Orsett was its beneficiary. No money exchanged hands in connection with the transfer of the properties to Mr. Feuer. The Superior Court judge did not credit Mr. Feuer's testimony that a promissory note had been issued by the Needham Rehabilitation Trust to the MB Mortgage Trust in the amount of "$585,910 [*sic*]."

describes a "deed in lieu" transaction, which has been approved by our appellate courts, and rely on *J & W Wall Sys., Inc.* v. *Shawmut First Bank & Trust Co.*, 413 Mass. 42 (1992), for the proposition that a deed given in lieu of foreclosure can, in some circumstances, constitute a valid transfer of a real estate interest. However, cases such as *J & W Wall Sys., Inc.*, *supra* at 43-45, and *Moloney* v. *Boston Five Cents Sav. Bank FSB*, 422 Mass. 431 (1996), endorsing the validity of a deed given in lieu of foreclosure, arise under circumstances quite different from those present here. In such cases, *after* defaulting on a loan, the borrower agrees to deliver to the lender a deed to the property previously pledged as security for the debt. Delivery of such a deed in lieu of foreclosure of a previously executed mortgage encumbering the same property is given in compromise of the parties' rights and obligations under the mortgage and note (often, but not exclusively, in exchange for release of the lender's claim to any deficiency between the value of the property and the obligation due under the note). See generally Murray, Deeds in Lieu of Foreclosure: Practical and Legal Considerations, 26 Real Prop. Prob. & Tr. J. 459, 460-472 (1991).[15]

In contrast, in the instant matter, the deed in lieu was given *in advance* of any default. When a deed (absolute on its face) is given at the time a debt is incurred for the purpose of securing payment of the debt, "a court of equity will treat the deed according to its true nature as a mortgage." *Fales* v. *Glass*, 9 Mass. App. Ct. 570, 573 (1980). See *Allen* v. *Mutual Acceptance Corp.*, 350 Mass. 553, 554 (1966) ("Whether a deed absolute in form is an equitable mortgage depends upon the intention of the parties as shown in the circumstances of its negotiation and execution"); Restatement (Third) of Property (Mortgages) § 3.2(b) (1997).

Under the express terms of the Levensons' separation agree-

---

[15]The tender of a deed in lieu of foreclosure must in any case be voluntary. See *J & W Wall Sys., Inc.* v. *Shawmut First Bank & Trust Co.*, 413 Mass. at 44-45. Whether the tender was initiated by the borrower, and whether the value of the real estate collateral was less than or equivalent to the outstanding loan balance due at the time of tender, are among the factors to be considered in determining whether the tender was voluntary. See, e.g., Murray, Deeds in Lieu of Foreclosure, *supra* at 463-465, 468.

ment, the deeds in the present case were intended to serve as additional (or alternative) security for Levenson's obligations under an anticipated loan transaction. Consistent with the provisions of this agreement, when Levenson borrowed funds from Mr. Feuer as trustee of the MB Mortgage Trust, the deeds were placed in escrow as part of the initial loan transaction. The defendants do not argue, and there is nothing in the terms of the separation agreement or the loan documents to suggest, that a conditional sale of the mortgaged property was intended. In these circumstances, delivery of the deeds constituted the delivery of additional instruments of security for the underlying debt. See *Carey* v. *Rawson*, 8 Mass. 159, 160 (1811); *Woodward* v. *Pickett*, 8 Gray 617, 618 (1857); *Steel* v. *Steel*, 4 Allen 417, 419-420 (1862).

To the extent that language in the agreement suggests the parties intended to circumvent laws governing foreclosure that otherwise would govern the manner in which title to the properties could be transferred, the language is void as against public policy and we give it no effect. "Though it be ever so strongly expressed that the estate shall be absolute if the money is not paid at the day fixed, such stipulation would be void. It does not depend upon the intent of the parties; because it is an intent contrary to the rules of law, which the law will not carry into effect." *Bayley* v. *Bailey*, 5 Gray 505, 510 (1855). See, e.g., *First Ill. Natl. Bank* v. *Hans*, 143 Ill. App. 3d 1033, 1038 (1986) ("parties cannot by an express stipulation in the mortgage transform the instrument into an outright conveyance upon default, [thereby] depriv[ing] the mortgagor of his redemptive rights").

The deeds were equitable mortgages, subject (inter alia) to the statutory requirements of G. L. c. 244, § 14, regarding foreclosure. The judge erred in concluding that because Mr. Feuer's recording of the deeds was pursuant to the terms of the separation agreement, it was therefore not a wrongful foreclosure.[16]

b. *Remaining claims.* Levenson's claim that Messrs. Kassler

---

[16]We uphold the dismissal of Levenson's claim that the defendants wrongfully converted the three properties and the rental income derived from one of his properties. It is apparent that the same acts alleged to have formed the

and Cramer intentionally interfered with his contractual relations assumes, erroneously, that Levenson was entitled to elect between the two "options" that had been provided by the terms of the memorandum of understanding. *Breyan* v. *Breyan*, 54 Mass. App. Ct. 372 (2002), cited by Levenson, is inapposite. There, the parties intended to be bound by their memorandum of understanding, whereas here the separation agreement superseded the memorandum. The judge was correct to conclude that Levenson failed to establish that the defendants had intentionally interfered with that agreement.

Likewise, Levenson's argument that he was entitled to judgment on the G. L. c. 93A claim on the ground that he was lured into signing the separation agreement upon assurances that the "option" language of the memorandum of understanding, although different from the language in the agreement, "was nonetheless operative," finds no support in the findings.[17]

We also agree with the judge's conclusion that the facts of the case do not support the claim of intentional infliction of emotional distress, which required Levenson to show that the conduct of the defendants "was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community." *Tetrault* v. *Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466 (1997), quoting from *Payton* v. *Abbott Labs*, 386 Mass. 540, 555 (1982).

There was no error in the dismissal of these claims.[18]

II. *Probate Court action.* The Probate Court's judgment in

---

basis of the alleged conversion also formed the basis for Levenson's wrongful foreclosure claim. In these circumstances, "duplicative damage recoveries will not be permitted." "Permitting awards under several counts where claims and injuries are factually distinguishable, but disallowing such recovery where they are not, will serve to avoid over or under compensation." *Calimlim* v. *Foreign Car Center, Inc.*, 392 Mass. 228, 236 (1984).

[17]In disposing of this claim, the trial judge also observed that although "Mr. Feuer may personally have benefitted from the transaction that ultimately transferred legal title in . . . Levenson's three properties to the Needham Rehabilitation Trust, whose sole beneficiary was an entity wholly owned by Mr. Feuer," it was June Levenson and Bronner, as clients of the firm, who might have grounds to complain, not Levenson.

[18]As to count nine (waste), Levenson's brief cites to no relevant authority and fails to rise to the level of appellate argument. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). In any event, the trial judge found that

favor of Levenson declared null and void the note, mortgages, and all deeds purporting to transfer legal title to the three properties, initially from Levenson to the MB Mortgage Trust, and then from the MB Mortgage Trust to the Needham Rehabilitation Trust. Levenson was ordered to execute new loan instruments with reformed terms, including the lender's right to foreclosure proceedings in the event Levenson again defaulted on the loan. The judgment thus effectively restored title in the mortgaged properties to Levenson and removed his default, giving him another eighteen months to pay the newly executed promissory note. All of Levenson's legal fees and expenses involved in restoring title in Levenson and preparing the new promissory note were declared to be the "sole liability" of Mr. Feuer. In addition, Mr. Feuer individually and Kassler & Feuer, P.C., were ordered to pay Levenson's attorney's fees for the declaratory judgment action,[19] later determined to be $100,800. The defendants who appeal from the declaratory judgment are the mortgage holder and entities to whom the mortgages were assigned: Mr. Feuer, individually and as trustee of the MB Mortgage Trust and the Needham Rehabilitation Trust; and Orsett Properties, Ltd. The defendant Mr. Feuer, and the intervener, Kassler & Feuer, P.C., also challenge the judgment insofar as it orders them to pay Levenson's attorney's fees for the declaratory judgment action. The Probate Court reserved and reported to us the question whether Kassler & Feuer, P.C., not a party to the proceedings below, could be assessed legal fees.

1. *Deed in lieu of foreclosure.* To the extent that the declaratory judgment action sought a determination regarding the validity of the deed transfers occurring in November, 1995, the action was properly brought. For the reasons we have discussed, see part I, *supra*, the Probate Court judge was correct to

there was no proof of damages due to waste, and as we have said, see note 5, *supra*, it is not open to Levenson to challenge the judge's findings.

We do not address Levenson's claim, raised for the first time on appeal, that alteration of the deeds constituted a forgery in violation of G. L. c. 267, § 1.

[19]Levenson was represented by counsel in the declaratory judgment action and in the Superior Court. He was without representation in the contempt proceedings, and has proceeded pro se in this appeal.

conclude that applicable foreclosure laws should not have been avoided and on this basis to declare the deeds null and void.

2. *Reformation of financing documents.* As we have earlier observed, Levenson neither appealed from the contempt judgment nor sought postjudgment relief. It was not open to Levenson to collaterally attack the contempt judgment in the declaratory judgment proceeding, and thus the Probate Court's findings undermining the propriety of the contempt proceeding — including the finding that "[a]n improper contempt complaint was brought against [Levenson]," should not have been made.[20] Nor should the judge have declared the loan documents signed by the special master null and void, as any infirmities in these documents could have been the subject of direct attack. See *Svenson* v. *First Natl. Bank of Boston*, 5 Mass. App. Ct. 440, 446-447 (1977) (plaintiff who took no appeal from Probate Court allowance of certain accounts cannot collaterally attack decrees by means of petition for declaratory judgment); *Pavlik* v. *Dmytryck*, 6 Mass. App. Ct. 915, 916 (1978) (action in Land Court was impermissible collateral attack on Probate Court judgment, even assuming that Probate Court had no authority to order conveyance of plaintiff's interest in land, where final judgment had entered, and rights of parties were thus "limited to appeal . . . or other methods of direct attack"); *Lombardo* v. *Gerard*, 32 Mass. App. Ct. 589, 599-600 (1992).

Nonetheless, the defendants do not contest the judgment to the extent that it corrected computational errors and conformed the terms of the note and mortgages to the parties' understandings as set forth in paragraph 7(b) of the separation agreement. The Probate Court judge found that the computation that resulted in a principal sum due under the note in the amount of $580,915 included (in addition to the alimony obligation, two years of prepaid interest, and a prepayment penalty equal to six months of interest) a sum of $6,965.26, reflecting nine percent interest on the $428,000 for the period from September 9 to November 16, 1993, that was not required to be paid under the separation agreement. Further, the note should not have provided

---

[20] In any event, as we discussed in connection with the Superior Court action, *supra,* the record does not support the finding that the complaint for contempt was improperly brought.

for a duplicative thirteen percent interest to be paid on the two years' prepaid interest. As the Probate Court judge also found, the note improperly included fees to be paid to Kassler & Feuer, P.C., in the amount of $1,171.25, that had been incurred by June Levenson in connection with the contempt action; and the mortgage holder was incorrectly identified as the "MB Trust," whereas the entity is correctly identified as the "MB Mortgage Trust."

Because the defendants have agreed to the Probate Court's correction of these errors, we shall allow that part of the judgment to stand. However, the Probate Court judge also found that the provisions of paragraph 7(b) were no longer binding due to these errors. He determined that, as a consequence, paragraph 7(c) (which made June Levenson the lender and contained other terms differing from those in paragraph 7[b]) "became operable." He therefore declared the note and mortgages null and void and directed Levenson to execute a new promissory note and mortgages payable to Mr. Feuer as trustee of the MB Mortgage Trust, but otherwise reflecting the terms in paragraph 7(c) of the agreement (including a term of eighteen months[21] and an interest rate of nine percent). This was error. As we have stated, *supra*, the proper vehicle for challenging the documents at issue was a motion for some kind of post-judgment relief or an appeal from the contempt judgment. We vacate and modify the judgment to the extent that it nullified the note and mortgages signed by the special master and ordered reformation inconsistent with paragraph 7(b) of the separation agreement.

3. *Attorney's fees.* The judgment also provided that Levenson was entitled to his reasonable fees and costs for the declaratory judgment action. Following further proceedings, the Probate Court determined the amount of Levenson's reasonable at-

---

[21]Although paragraph 7(b) of the agreement failed to specify the term of the loan, the note signed by the special master on Levenson's behalf provided for a term of two years. As we have discussed, see note 10, *supra*, the parties' intent regarding the term of the note pursuant to paragraph 7(b) was litigated in the Superior Court action, and on the basis of testimonial evidence, the judge determined that the parties intended that the note have a two-year term. The parties do not challenge that finding, and we adopt it in our consideration of this case.

torney's fees to be $100,800,[22] the payment thereof to "be the sole responsibility of the firm of Kassler & Feuer, P.C. and Curt R. Feuer." Noting, however, that Kassler & Feuer, P.C., "was never formally named as a party to the proceedings," the Probate Court reserved and reported to the Appeals Court the following question: "whether legal fees may be assessed against Kassler & Feuer, P.C." Mr. Feuer appealed from the judgment against him. Kassler & Feuer, P.C., was permitted to intervene in this appeal in order to challenge the judgment and to address the question reserved and reported to the Appeals Court.

The Probate Court judge found that the court had the authority to award counsel fees pursuant to G. L. c. 231A, § 7, and that the "case involved the kind of 'exceptional circumstances' which would warrant the imposition of [attorney's] fees [because Levenson] has been put to the expense of legal fees in consequence of the wrongful conduct of the Defendant." In support of her finding, the judge cited two cases where an award of attorney's fees had been upheld: *Wheeler* v. *Hanson*, 161 Mass. 370 (1894) (malicious prosecution), and *M.F. Roach Co.* v. *Provincetown*, 355 Mass. 731, 732-733 (1969) (fees for third-party suit upheld where tortious conduct required plaintiff to sue third party to protect his rights). It appears from the judge's reliance on these cases that the award of fees was based upon the court's finding in the declaratory judgment action that "[a]n improper contempt complaint was brought against [Levenson]." However, as we have discussed, it was not open to Levenson to collaterally attack the contempt proceeding, nor was the contempt complaint improperly brought.[23] Viewed in that light, this matter reduces to the question whether parties to a real

---

[22]The Probate Court trial judge retired after judgment entered in the declaratory judgment action. Thereafter, Levenson filed a motion seeking attorney's fees from Kassler & Feuer, P.C., and Mr. Feuer. The motion judge appointed the now retired trial judge as master to determine the amount of the attorney's fees. Following a two-day evidentiary hearing, the master concluded that Levenson was entitled to an award of $100,800. The amount of the award was adopted by the motion judge, and is not challenged on appeal.

[23]We also do not think the award could have been made based upon the asserted bad faith of Mr. Feuer or the members of his firm in seeking to enforce the terms of the divorce agreement, which had been confirmed by the court, and which, the court found, was the product of negotiation between parties represented by "most competent counsel." Nor do the computational errors in

estate transaction may waive the provisions of the foreclosure statute, and litigation on that basis does not warrant the award of attorney's fees. See, e.g., *Chartrand* v. *Riley*, 354 Mass. 242, 244 (1968), citing *MacNeil Bros.* v. *Cambridge Sav. Bank*, 334 Mass. 360 (1956) (award of attorney's fees reversed in "suit to redeem real estate from mortgages").[24]

The judge also found that the court had the power to assess fees against Mr. Feuer as sanctions. However, Mr. Feuer was not acting in his capacity as an attorney representing any party before the court either in the contempt action or in the declaratory judgment action. Contrast *Avelino-Wright* v. *Wright*, 51 Mass. App. Ct. 1 (2001); *Ramsdell* v. *Doliber*, 59 Mass. App. Ct. 446 (2003). For this reason, if no other, Mr. Feuer could not be sanctioned in these circumstances.[25]

III. *Conclusion.* 1. *Superior Court action.* We reverse the judgment as to count five, and remand to the Superior Court for further proceedings consistent with this opinion, including an assessment of actual damages (as may be offset by amounts determined to be due from Levenson). In all other respects the judgment is affirmed.

2. *Probate Court action.* The order of August 21, 2001, awarding Levenson attorney's fees in the amount of $100,800, is reversed. We decline to answer the reported question.

The declaratory judgment is affirmed in part, reversed in part, and vacated and remanded in part. Insofar as it awards Levenson attorney's fees for the declaratory judgment action, the

the documents (see discussion, *supra*) warrant the imposition of attorney's fees.

[24]For the same reason, even if Kassler & Feuer, P.C., had been made a party to the action, cf. *Cox* v. *Cox*, 56 Mass. App. Ct. 864 (2002), an award of fees against the firm would not be warranted. We therefore decline to answer the reported question. Cf. *Commonwealth* v. *Landry*, 438 Mass. 206, 208 n.3 (2002) ("[w]e answer reported questions only insofar as necessary to resolve issues raised by the record").

[25]We do not dispute that there is more than a whiff of impropriety arising from Mr. Feuer's role in the real estate transactions, which resulted in record title to Levenson's properties being held by an entity wholly owned by Mr. Feuer. Neither the Probate Court judge nor the Superior Court judge, see notes 14, 17, *supra*, credited Mr. Feuer's testimony concerning his intentions in transferring title to the properties to the Needham Rehabilitation Trust. Cf. *Beit* v. *Probate & Family Ct. Dept.*, 385 Mass. 854, 861 n.13 (1982).

judgment is reversed. The judgment is affirmed as to its determination of computational errors in the loan instruments, and insofar as it declares null and void the deeds executed by the special master and the deed executed by Mr. Feuer conveying title to all three properties to himself as trustee of the Needham Rehabilitation Trust.[26] Insofar as it declares null and void the promissory note and mortgages, and orders Levenson to execute new loan instruments, the judgment is vacated and the matter is remanded to the Probate Court for modification of the judgment so as to reform rather than nullify the note and mortgages: the amount secured by the promissory note and mortgages shall be adjusted to reflect the computational errors determined by the Probate Court, and references to the "MB Mortgage Trust" shall be substituted for the "MB Trust" on the note and mortgages. The interest rate shall remain at thirteen percent and the maturity date of the note shall remain November 15, 1995. The modified judgment shall reflect the book and page recording references of the affected instruments and the certificate of title number of any affected registered land and shall order that the parties record with the appropriate registries of deeds, and file with the appropriate registry district of the Land Court, certified copies of said modified judgment.

In all other respects, the judgment is affirmed.

*So ordered.*

---

[26]Insofar as it assesses Mr. Feuer for Levenson's attorney's fees and expenses incurred in restoring title in the properties in Levenson, the judgment (not appealed from in this respect) is also affirmed.