UNITED BANK vs. SUSAN MANI & another.[1]

No. 11-P-163.

Hampshire. October 6, 2011. - December 30, 2011.

Present: GRAINGER, FECTEAU, & AGNES, JJ.

*Mortgage,* Foreclosure.

In a civil action brought by a bank seeking a judgment declaring its right to apply the surplus proceeds of a foreclosure sale to the outstanding balances of the defendant husband's commercial loans, the judge erred in granting half the surplus proceeds to the bank, where the record did not support a claim that the husband had any interest in the property in question at the time of the foreclosure sale [77-79]; however, the judge properly granted summary judgment in favor of the bank on the defendants' counterclaims based on G. L. c. 93A [79-80].

CIVIL ACTION commenced in the Superior Court Department on August 30, 2006.

The case was heard by *Bertha D. Josephson,* J., on motions for summary judgment.

*Peri K. Agulnek* for the plaintiff.

*Susan Mani,* pro se.

*Mani George,* pro se.

GRAINGER, J. Surplus proceeds from a foreclosure sale, no less than a deficiency, can provide abundant motivation for continuing dispute, as this case demonstrates. The controlling statute, G. L. c. 183, § 27, obliges the mortgagee to pay any surplus, after satisfaction of the debt and the mortgagee's expenses, to "the mortgagor." We are confronted in these cross appeals, however, with an individual who executed a mortgage but had no interest in the property at the time of foreclosure sale.

*Background.* The pertinent facts are largely undisputed. The defendants, Mani George and Susan Mani, are husband and

---

[1]Mani George.

wife. They borrowed funds from United Bank (bank) to construct a residence in South Hadley; subsequently the loan was converted to a conventional first mortgage loan executed by both borrowers on October 5, 1999. It appears from the record that the property initially had been conveyed to both husband and wife as joint tenants several months before their mortgage loan application. However, it is undisputed that both the application and the bank's internal underwriting documents list the wife as sole title holder, which she became by quitclaim deed of the same date the first mortgage was executed.[2],[3] The husband signed the mortgage application as "borrower" and the wife did so in the capacity of "co-borrower." The latter was the term used in the bank's underwriting documentation to designate the party "taking title" to the property.

The husband, both before and after execution of the mortgage, borrowed additional funds from the bank in three separate transactions related to his commercial ventures, involving him alone. Documentation underlying these loans included standard pledges of the husband's after-acquired real and personal property as collateral, as well as the bank's "right of offset against all monies . . . of [the husband] . . . in the possession, custody, or control of the [b]ank." The wife did not guarantee these loans.

The mortgage loan went into default; a judgment from the Land Court issued in due course in favor of the bank, pursuant to which a foreclosure sale was conducted in July, 2006.[4] At the time of the foreclosure sale the husband was in default of his commercial loan obligations. In its prompt complaint for interpleader and declaratory judgment, the bank asserted a right to apply the surplus proceeds of the foreclosure sale to the outstanding balances of the husband's commercial loans. The defendants

---

[2]The summary judgment record supports a slight inference that the mortgage was executed before the husband deeded his interest in the property to the wife. Taking the evidence in the light most favorable to the bank, we shall infer for decisional purposes that the mortgage was executed first. Had the deed been executed first, it would be indisputable that the husband was never a mortgagor.

[3]About one year later, the bank made a home equity loan solely to Susan Mani. The bank's use of foreclosure sale proceeds to satisfy the unpaid balance of this second mortgage loan is not at issue.

[4]The defendants' Land Court challenge to the foreclosure proceedings was ultimately unsuccessful. *Mani* v. *United Bank*, 70 Mass. App. Ct. 1115 (2007).

opposed such application and counterclaimed, asserting numerous legal and equitable claims against the bank.[5] In our consideration of the defendants' counterclaim in this appeal we are concerned chiefly with their assertion of violations of G. L. c. 93A.

On cross motions for summary judgment, a judge of the Superior Court awarded half the surplus proceeds to the bank and the remaining half to the wife.[6] Notwithstanding the Solomonic attraction of this solution, we are brought to a different result for the reasons outlined below.

*Discussion.* 1. *Surplus foreclosure proceeds.* Our inquiry begins with the plain language of G. L. c. 183, § 27:

> "The holder of a mortgage of real estate, or his representatives, out of the money arising from a sale under the power of sale shall be entitled to retain all sums then secured by the mortgage, whether then or thereafter payable, including all costs, charges or expenses incurred or sustained by him or them by reason of any default in the performance or observance of the condition of the mortgage or of any prior mortgage, *rendering the surplus, if any, to the mortgagor*, or his heirs, successors or assigns, unless otherwise stated in the mortgage . . . ." (Emphasis added.)

---

[5]The defendants asserted that the bank, inter alia, conducted the foreclosure illegally; violated the civil provisions of the Federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961 et seq.; violated art. 10 of the Massachusetts Declaration of Rights; committed mail and wire fraud; breached a confidentiality agreement; interfered with contractual relations, breached a fiduciary duty; and, inevitably, violated G. L. c. 93A. The claims other than the c. 93A claims are waived. In her decision below, the judge noted as follows:

> "Both defendants made oral and written representations that they were no longer pursuing any of the counterclaims except for the counterclaim under G. L. c. 93A. Subsequently, the court ordered the defendants on July 29, 2008, to file either a stipulation of dismissal pursuant to Mass. R. Civ. P. 41(a)[, 365 Mass. 803 (1974),] or a motion pursuant to Mass. R. Civ. P. 41(b) seeking leave of court to dismiss. The defendants failed to comply with this order."

[6]After the instant summary judgment disposition, the wife commenced a Superior Court action against the bank and others sounding primarily in fraud, based on the same facts. The trial judge dismissed the latter case on grounds of claim preclusion, and this court affirmed in an unpublished memorandum and order issued pursuant to Rule 1:28. *Mani* v. *United Bank*, 79 Mass. App. Ct. 1127 (2011).

The bank argues that the statute requires it to pay any surplus to the mortgagor or mortgagors, that the husband — having executed the mortgage — is a mortgagor, that all the surplus proceeds are therefore "monies . . . of [the husband's]" pledged as collateral for commercial loans and, finally, that because it is in "possession, custody, or control" of these monies as a result of the foreclosure sale, it has a right of offset pursuant to the commercial loan agreements. Thus, on appeal, the bank claims error in the judge's award of half the proceeds to the wife.

The wife points to the anomalous result of sale proceeds paid to a person with no interest in the property that was sold. On appeal she asserts error in the award of half the proceeds to the bank. Notwithstanding her close connection to a person with undisputed outstanding loan obligations to the bank, we are constrained to agree with the wife. The husband is not a mortgagor as that term is used in the statute.

The requirement that a mortgagor have an interest in the property that secures the loan is firmly rooted in the common law. "The substance of the contract of mortgage is, that if the debt is not paid, the mortgagee shall have the interest in the land, *which his mortgagor had*" (emphasis added). *Palmer* v. *Fowley*, 5 Gray 545, 547 (1856). "A mortgage of real estate is a conveyance of the title or of some interest therein defeasible upon the payment of money or the performance of some other condition." *Perry* v. *Miller*, 330 Mass. 261, 263 (1953). A mortgage is "[a] conveyance of title to property that is given as security for the payment of a debt." Black's Law Dictionary 1101 (9th ed. 2009). There is no indication that the drafters of G. L. c. 183, § 27, intended to depart from the long-understood common meaning of the term "mortgagor" as one holding an equity of redemption and a right of possession of the property. See *J & W Wall Sys., Inc.* v. *Shawmut First Bank & Trust Co.*, 413 Mass. 42, 44 n.3 (1992).

In the case at bar, the record does not support a claim that the husband had any interest in the property at the time of the foreclosure sale. On October 5, 1999, the same day the construction loan mortgage was executed, the husband deeded his entire interest in the property to the wife. Even if we assume that the husband executed the mortgage before that quitclaim deed (see

note 2, *supra*) and thus was, however briefly, a mortgagor of the property,[7] the deed divested him of his equity of redemption (and right of possession). See *Fales* v. *Glass*, 9 Mass. App. Ct. 570, 574 (1980), citing *Perry* v. *Hayward*, 12 Cush. 344, 348-349 (1853) ("It is settled that a debtor under an express mortgage can convey his equity of redemption by a quitclaim deed").

As such, the bank has not presented a genuine issue of material fact relating to its claim that the husband was a "mortgagor" entitled to the surplus under G. L. c. 183, § 27. As a matter of law on this record, the wife, as the individual owner with the equity of redemption, was the sole mortgagor and was entitled to the full amount of the undivided surplus.[8] See *Spaulding* v. *Quincy Trust Co.*, 313 Mass. 752, 753 (1943) ("Upon the foreclosure, the surplus stood in the place of the equity of redemption, and belonged to the devisees of [the original mortgagor]"). Accordingly, by collecting a surplus from the sale the bank is not in "possession, custody, or control" of funds belonging to its debtor, the husband.[9] His antecedent agreements to collateralize other obligations to the bank with after-acquired property are not binding on third parties, including the wife. The loan documents between the parties provide no basis to apply proceeds from the sale of the property to obligations other than the mortgage loan on the property itself. The bank was free to include language in the mortgage documents providing that the real property would collateralize all debts incurred by either defendant to the bank, but it did not do so.

2. *G. L. c. 93A.* We affirm the summary judgment in favor of

---

[7]We note that despite the demise of traditional dower and curtesy in the Commonwealth, G. L. c. 189, § 1, it is not uncommon for lenders and real estate professionals to obtain the signature of a nonowner spouse to an agreement to transfer an interest in real property. See Eno & Hovey, Real Estate Law § 6.4, at 197 (4th ed. 2004). However, in the present context, the husband's signature has neither equitable nor legal consequence, and reliance by the bank cannot survive cursory examination. Title searches and title insurance are among the most basic measures of due diligence.

[8]Likewise, and as the judge noted, the bank is not entitled to surplus payment as a "mortgagor['s] . . . successor[] or assign[ee]" under the statute. The bank concedes that it does not have a lien on the property. Contrast *First Colonial Bank for Sav.* v. *Bergeron*, 38 Mass. App. Ct. 136, 137-138 (1995).

[9]There is no assertion by the bank of fraudulent conveyance or any other theory by which it might be entitled to reach the wife's property to satisfy the husband's debts, and the bank disavowed any such theory at oral argument.

the bank with respect to the defendants' claims based on G. L. c. 93A and, to the extent applicable, related claims of improper actions by the bank in the conduct of the foreclosure sale. As the judge properly noted, the record is entirely devoid of any basis for the myriad claims first recited, then largely abandoned (see note 5, *supra*), by these defendants.[10]

*Conclusion.* The judgment is vacated insofar as it awards half the surplus foreclosure proceeds to the bank, and the judgment shall be modified to reflect the wife's entitlement to all the surplus foreclosure proceeds. The judgment is affirmed in all other respects.

*So ordered.*

---

[10]We note specifically that, despite representations by the defendants at oral argument, the record does not support the claim that the bank misrepresented property tax liabilities prior to sale or paid excess tax obligation from the proceeds of the sale.