Curran, Dennis J., J.
Introduction
After a trial without a jury, and based on the credible evidence, the court makes the following Findings of Fact and Rulings of Law.
Procedural Background
Nigel Thorpe owned properly at 16 Hillside Way, Wilmington, Massachusetts. Two mortgages were held on the property, a first by Wells Fargo Bank, and a second by Wachovia Bank, N.A. Some seven years ago, after default, the latter foreclosed on the properly under a power of sale provision in the mortgage. Wachovia sold the property to a third-party buyer, paid both itself and the first mortgagee, and distributed the sum of $74,502.96 to Mr. Thorpe. This case concerns Wachovia’s pay-off of the first mortgagee.
The case has had a torturous history in the United States Bankruptcy Court as well as the Middlesex Probate and Family Court where Mr. and Mrs. Thorpe, who had been married for over 17 years, were divorced. After Mr. Thorpe made certain representations to both the United States Bankruptcy Court as well as the Middlesex Probate Court, discussed below, he sued Wachovia because it had disbursed the excess foreclosure proceeds in satisfaction of his obligation to the first mortgagee. He asserted a G.L.c. 93A demand in this regard, seeking treble damages.
The case proceeded for some time under Mr. Thorpe’s name as plaintiff, but as it wended its way through the Bankruptcy Court, Mr. Thorpe’s name was substituted for by the United States Bankruptcy Court Chapter 7 Trustee, Harold B. Murphy.
During the course of this matter, the parties filed cross motions for summary judgment which were heard on March 29, 2011 by another session judge who found the following facts as undisputed:
On July 25, 2006, Wachovia conducted a foreclosure auction on property owned by Thorpe. The closing of the foreclosure auction on properly took place on August 25, 2006. On January 23, 2007, Thorpe [ ] sent a “M.G.L.c. 93A Demand for Payment of Excess Foreclosure Proceeds” letter to Wachovia. In that letter, Thorpe ... demanded that Wachovia pay Thorpe $270,000.
On (sic) year later, on January 28, 2008, Thorpe filed a voluntary petition under chapter 7 of the *268 bankruptcy code in the United States Bankruptcy Court... In his schedules of assets and liabilities, filed under oath, Thorpe did not disclose any claim he possessed against Wachovia. On April 11, 2008, the bankruptcy court entered an order discharging Thorpe of his scheduled liabilities of $888,000. On April 14, 2008, the bankruptcy court entered an order discharging Thorpe’s bankruptcy trustee [ ] from any further duties as trustee and closing the bankruptcy action. On June 4, 2008, Thorpe commenced this action with a verified complaint stating, among other things, that the alleged excess funds from the 2006 foreclosure sale belong to him. In addition, . . . Thorpe went through a divorce proceeding in which [he] failed to disclose his claim against Wachovia or that he had received some distribution of equity from the foreclosure sale. In fact, the court in the divorce action understood, and found, that no equity was received by either Thorpe or his wife from the foreclosure sale.
(See Memorandum and Order regarding Cross Motions for Summary Judgment, paper 22.)[1]
The defendants’ further motion for summary judgment was heard on October 13, 2011, after which this Court allowed the defendants’ motion as to counts I, IV, V, VI and VII, leaving counts II and III for jury determination. On October 1, 2012, the parties waived their jury right and proceeded to trial [29 Mass. L. Rptr. 537],
FINDINGS OF FACT
At trial, most of the central facts were undisputed.
Wachovia Bank, N.A. held a second mortgage dated July 26, 2000 secured by a residential property at 16 Hillside Way Wilmington, Massachusetts. Nigel Thorpe owned the property and was the borrower under the Wachovia mortgage. In March 2006, Mr. Thorpe defaulted and Wachovia commenced foreclosure proceedings. It published a notice of sale that stated: “These premises will be sold and conveyed subject to . . . all. . . liens or claims in the nature of liens ... or existing encumbrances of record which are in force and are applicable, having priority over said mortgage
The power of sale clause in the mortgage read: ‘The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of sale, including reasonable attorneys fees and costs of title evidence: (b) to all sums secured by this [m] ortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.”
In March 2006, Mr. Thorpe also defaulted on the first mortgage held by Wells Fargo Bank, N.A. Wells Fargo commenced a separate foreclosure proceeding, which was never completed.
On July 25, 2006, Wachovia, as the second mortgagee, conducted a foreclosure auction on the property. The Coniston Group, Inc. submitted the winning bid of $420,000 at the sale. At various times throughout 2006, the property had been appraised at a value of between $610,000 and $690,000. The closing for the foreclosure sale occurred on August 25, 2006, during which the sale to Coniston was effectuated. The foreclosure deed states that Wachovia conveyed the premises to Coniston “subject to all outstanding tax titles, municipal, or other public taxes, assessments or liens, if any,” for the consideration of $420,000.
Of the $420,000 in foreclosure proceeds, Wachovia received $231,373.79 and Wells Fargo was paid $178,626.61, the amount due under its first mortgage. The buyer’s deposit of $10,000 remained in the possession of Wachovia’s attorney. At the time of foreclosure, the outstanding balance on Wachovia’s mortgage to Mr. Thorpe was approximately $130,000. Wachovia retained the sum of $156,870.83 in order to satisfy the outstanding balance of the mortgage and the costs of foreclosure.
Some five months later, Mr. Thorpe asserted that Wachovia had no right to pay off the Wells Fargo loan and demanded $270,000 under a G.L.c. 93A letter. At that time, Wachovia paid Mr. Thorpe the excess remaining from the foreclosure proceeds, that is, $64,502.96 and the buyer’s $10,000 deposit.
By the time of trial, Mr. Thorpe had already received $74,502.96 from the surplus. The substitute plaintiff seeks damages in the amount of the $178,626.61 payment to Wells Fargo, which he contends should have been given to Mr. Thorpe, but instead, were erroneously distributed to the senior mortgagee.
RULINGS OF LAW
I. The Effect of the Foreclosure Sale and the $420,000 Bid
Section 14 of Chapter 244 of the General Laws governs the procedure for foreclosure under a power of sale, and states in pertinent part:
. . . [T]he premises shall be deemed to have been sold, and the deed thereunder shall convey the premises, subject to . . . all . . . outstanding tax titles, municipal or other public taxes, assessments, liens or claims in the nature of liens, and existing encumbrances of record created prior to the mortgage, whether or not reference to such . . . liens or encumbrances is made in the deed . . .
The Supreme Judicial court has interpreted this section as follows:
The import of these statutory words is that all that can be sold in execution of a power of sale in a mortgage is the title conveyed by the mortgagor by the mortgage subject to the specified restrictions ... In other words, [the foreclosing party] must sell the equity of redemption of the mortgagor . . . and whatever interest has passed under the mortgage . . . The bids made at such a sale must be for that which is to be sold and for that alone; that is to say, the bids must be for the value of the interest in the *269 estate which will pass under the foreclosure deed. If there are prior mortgages, these cannot be sold, and their amount ought not to be included in the bids . . . The bids in amount are and must be net and not gross.
Brooks v. Bennett, 111 Mass. 8, 16 (1931).
Thus, at foreclosure auction governed by G.L.c. 244, §14, the amounts of the bids do not include or absorb any amount that the buyer may intend to pay in order to discharge a prior mortgage on the property. See Antonellis v. Weinstein, 258 Mass. 323, 325-26 (1927).
In this case, there is no dispute that Coniston’s winning bid at the Section 14 foreclosure sale was $420,000. It is also undisputed that the foreclosure deed sets forth the consideration of $420,000, which constitutes the consideration paid by Coniston for the interests that passed under the deed. Those interests were limited to the equity of redemption and Wachovia’s rights under its mortgage. See Brooks, 277 Mass, at 16. By the terms of the deed, and as a matter of law, the property interest that passed under the foreclosure deed remained encumbered by the Wells Fargo mortgage. See id.
According to Wachovia’s erroneous interpretation of the deed and the transaction, the $420,000 constituted the total consideration for the unencumbered property, as a portion of that amount was allegedly intended to discharge the prior mortgage.[2] This interpretation is inconsistent with the plain language of the deed and Massachusetts law governing the foreclosure of real estate. See Brooks, 111 Mass, at 16. As the Supreme Judicial Court has stated, “(i]f there are prior mortgages, these cannot be sold [upon foreclosure of a junior lien], and their amount ought not to be included in the bids.” Id. Accordingly, the court finds that the $420,000 bid and subsequent consideration did not include an amount to discharge the Wells Fargo Mortgage.
II. Distribution of the Surplus
Having found that the bid and consideration paid by Coniston did not include the amount necessary to pay off the prior mortgage, it remains for the court to determine how the surplus proceeds from Wachovia’s foreclosure sale should have been applied.
According to the terms of the mortgage and G.L.c. 183, §27, following foreclosure, the mortgagee may first apply the proceeds from the sale to the reasonable costs of the sale and the sums secured by its mortgage. Therefore, Wachovia acted within its rights in applying approximately $156,870.83 to satisfy its mortgage and the costs of foreclosure.
By the mortgage terms, any remaining funds must then be applied to “the person legally entitled thereto.”[3] The individual who was legally entitled to receipt of the surplus was the “mortgagor, or his heirs, successors, or assigns . . .” See G.L.c. 183, §27. Despite Wachovia’s unsupported contention to the contrary, Wells Fargo, as senior mortgagee, was not a “successor or assign” of the mortgagor.[4] By the plain language of G.L.c. 183, §27, the mortgagor, Mr. Thorpe, was entitled to receipt of the surplus. Wachovia was not permitted to unilaterally disburse the excess proceeds elsewhere in order to satisfy additional debts of the mortgagor.[5] See generally United Bank v. Maní, 81 Mass.App.Ct. 75, 78-79 (2011) (holding that the foreclosing Bank was required to remit the surplus to the mortgagor, and was prohibited from keeping a portion of the surplus in satisfaction of unrelated debts of the mortgagor’s husband).
Contrary to Wachovia’s contention, the requirement that it pay the surplus of the foreclosure proceeds to Mr. Thorpe would have had no effect on his obligations to Wells Fargo. See Marshall v. Francis, 332 Mass. 282, 285 (1955) (foreclosure of a junior lien-holder has no effect on the rights of the senior mortgagee). Assuming that the surplus from Wachovia’s sale had been properly distributed to Mr. Thorpe, and in the event that Coniston decided not to pay off the remaining debt on the first mortgage, Wells Fargo would have had an undiminished right to foreclose on the property to satisfy Mr. Thorpe’s debt. Had this procedure failed to satisfy the debt in full, Wells Fargo certainly could have sought a deficiency judgment against Mr. Thorpe based on his continued obligations under the promissory note. See G.L.c. 244, §17A (permitting deficiency action following foreclosure by power of sale as long as certain notice provisions are met). Thus, the court’s straightforward application of G.L.c. 183, §27 is not destructive of the prior mortgagee’s rights; the import of the court’s finding is merely that a foreclosing mortgagee in Wachovia’s position may not contravene the clear dictates of G.L.c. 183, §27 and unilaterally distribute surplus foreclosure proceeds to other creditors of the mortgagor in the absence of any attachment, court order, or other sufficient legal process.
III. Equitable Considerations
Finally, Wachovia argues that because of Mr. Thorpe’s various misrepresentations during his divorce and bankruptcy proceedings, and because Mr. Thorpe benefited from the distribution to Wells Fargo in the form of a discharge of his prior mortgage, it would be inequitable to grant relief in this case. Assuming, without deciding, that plaintiffs remedy in this case is equitable in nature, such considerations do not bar recovery.
At this stage of the proceeding, the plaintiff is the trustee of Mr. Thorpe’s bankruptcy estate. The trustee is charged with representing the interests of Mr. Thorpe’s creditors, who were already harmed by Mr. Thorpe’s nondisclosure during the bankruptcy proceeding. Using this same nondisclosure to wipe out the trustee’s claim in this case would effectively “land *270 another blow on the victims of bankruptcy fraud.” See Biesek v. Soo Line R.R. Co., 440 F.3d 410, 413 (7th Cir. 2006) (refusing to apply the equitable doctrine of judicial estoppel against creditors who had been victimized by debtor’s nondisclosure during previous bankruptcy proceeding). Similarly, though Mr. Thoipe also failed to disclose a potential asset in his divorce proceeding, it would serve no equitable purpose to punish his bankruptcy estate, i.e. his creditors, for this indiscretion.
In summaiy, Mr. Thorpe’s dishonesty in the earlier proceedings was inexcusable; however, he is no longer a party to this case, and withholding recovery on account of his prior misdeeds would only exacerbate the harm he has already caused. By the same token, Wachovia should not be “off the hook” for its failure to properly apply the proceeds from the foreclosure sale in accordance with the clear terms of the mortgage and G.L.c. 183, §27. Though Wachovia argues that no harm was done when it distributed the surplus foreclosure proceeds to Wells Fargo, the bankruptcy trustee correctly observed that if Wachovia had properly given the surplus to the mortgagor, as opposed to using the funds to pay off a secrued creditor (Wells Fargo), the payment likely would have resulted in an increase in the value of the bankruptcy estate and, in turn, a larger recovery for Mr. Thorpe’s additional creditors in the bankruptcy proceeding.
IV. Conclusion
As detailed above, after applying the foreclosure proceeds to its own mortgage and the costs of foreclosure, Wachovia was required by the terms of the mortgage and by statute to disburse the remainder of the proceeds to the mortgagor, Nigel Thorpe. It erroneously permitted the remainder of the surplus to be disbursed to the senior mortgagee, Wells Fargo. In doing so, Wachovia deprived Mr. Thorpe of his legal right to the funds. Wachovia already provided Mr. Thorpe with $74,502.96 of the excess from the foreclosure proceeds, but the remaining balance due to Mr. Thorpe is $178,626.61.
ORDER
Judgment shall enter after trial without jury for the plaintiff Harold B. Murphy, as Trustee of the Chapter 7 Estate of Nigel Thorpe, against the defendant Wachovia Bank of Delaware, N.A. in the sum of $178,626.61, plus interest in the amount of $108,938.72 and costs.

Nhe court adopts the quoted findings of the motion judge as part of its Findings of Fact below.

he subjective intent of the buyer is wholly irrelevant to the issue of whether the bid price included an amount for pay-off of the prior mortgage. See Antonellis, 258 Mass. at 325; see also Chute v. Cronin, 272 Mass. 471, 474 (1930). In Chute, the Supreme Judicial Court held that the buyer’s intent had no effect in determining whether the bid at the foreclosure sale included the amount of the first mortgage; however, in that case a unique provision in the notice of sale informed all bidders that the cash price to be paid was the difference between the amount of the bid and the amount due on the first mortgage. Id. at 474. No such provision appeared in the Notice of Sale sent by Wachovia prior to its foreclosure.

There is no merit to Wachovia’s argument that when Thorpe breached the terms of the mortgage by failing to make timely payments, Wachovia was relieved of its obligation to comply with the terms of the Statutory Power of Sale provisions of the mortgage. In fact, Thorpe’s breach triggered those provisions.

Wachovia relies on First Colonial Bank for Savings v. Bergeron, 38 Mass.App.Ct. 136, 138 (1995), for the supposed proposition that Wells Fargo, as senior mortgagee, was a “successor or assignee” of the mortgagor. This case merely holds, however, that a junior lienholder has an equitable right in the surplus following foreclosure, making a junior lien-holder a “successor” or “assignee” of the mortgagor. See id. Wachovia also cites Antonellis in support of its position that upon foreclosure of a junior lien, the senior lien attaches in equity to the surplus from the sale. This is an incorrect reading of the case. In Antonellis, the court held that following foreclosure of a senior mortgage, the plaintiffs’ junior liens attached in equity to the surplus from the foreclosure sale. Antonellis, 258 Mass. at 325. As a result, the foreclosing mortgagee was prohibited from using the surplus for the purpose of discharging two senior mortgages, and instead had to account to the junior lienholders who held an equitable interest in the surplus. See id.

Wachovia is not immune from liability simply because Conistoris attorney may have actually transferred the funds to Wells Fargo. See G.L.c. 183, §27 (“No person other than the holder of the mortgage shall be bound to see to the application of the money arising from (a foreclosure] sale").